DOWNING *v.* DUNLAP COAL, ETC., CO.

(*Knoxville.*  September 28, 1893.)

SUPERSEDEAS.  *Of appointment of receiver.*

A supersedeas is properly granted by a judge of this Court to stay an interlocutory order of a Chancery Court, based alone upon bill, answer, and *ex parte* affidavits, placing a solvent and going corporation in the hands of a receiver pending a suit by the minority of its stockholders, seeking to wind up its affairs, thereby determining, finally, in advance of a hearing on the merits, issues made by the pleadings vital to the interests of the parties, and wresting the management of the corporation from the majority of its stockholders, and changing a deliberate policy of great importance, asserted by the defendants in their answer to have been adopted by assent of complainants.

Cases cited: Railroad *v.* Huggins, 7 Cold., 217; Mabry *v.* Ross, 1 Heis., 769; Park *v.* Meek, 1 Lea, 80; Redmond *v.* Redmond, 9 Bax., 561; Roberson *v.* Roberson, 3 Lea, 50; Baird *v.* Turnpike Co., 1 Lea, 394; Enochs *v.* Wilson, 11 Lea, 228; Richmond *v.* Yates, 3 Bax., 204; Cone *v.* Paute, 12 Heis., 506; Hoge *v.* Hollister, 8 Bax., 534; Payne *v.* Johnson, 1 Leg. Rep., 363.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

WATKINS & BOGLE and LEWIS SHEPHERD for Complainants.

CLARK & BROWN for Respondent.

A. D. BRIGHT, Sp. J. This is a motion to discharge a supersedeas of an interlocutory decree pronounced by Chancellor McConnell in the Chancery Court of Hamilton County, Tenn., in the above cause. The supersedeas was granted by Judge Snodgrass, a member of this Court, who prepared, on the application for said supersedeas, a written opinion, setting forth the facts and the law of the case, which opinion we adopt as the opinion of this Court upon said motion.

The motion to discharge the supersedeas is overruled and disallowed by the Court, and complainants, Sheridan and Rhoades, are taxed with costs* of this motion. Said opinion of Judge Snodgrass referred to is hereto appended, and made the opinion of this Court.

---

SNODGRASS, J. This is an application by the defendant corporation for supersedeas of interlocutory decree of the Chancellor, appointing a receiver and certain adjudications therewith, made by Chancellor McConnell in advance of final hearing and on motion of complainants, Sheridan and Rhoades, supported by affidavits. The orders complained of were made June 3 and July 17, 1893, and are as follows:

*First Order.*—"The case thereupon came on to be heard on the application (motion formerly made) of

---

* Held, on application for supersedeas of the execution, to embrace the entire costs of the cause accrued in this Court.—REPORTER.

Downing *v.* Dunlap Coal, etc., Co.

complainants, O. J. Sheridan and W. J. Rhoades, for the appointment of a receiver of the defendant, the Dunlap Coal, Iron and Railway Company, and, after hearing the affidavits and proofs offered by the defendant as well as by the complainants, and after full argument of said motion by counsel for complainants as well as defendants, the Court finds that said bill is properly filed to wind up said corporation, and to preserve its assets; that it has a large amount of unpaid stock subscriptions due to it, and owes large debts on its land purchases; that said unpaid stock subscriptions constitute a trust fund for the payment of the debts of the corporation, and that they ought to be collected and applied to the payment of said indebtedness.

"And the Court further finds that said corporation is controlled by the stockholders who are indebted to it on their stock subscriptions, and that they have neglected and refused to pay their subscriptions in full or cause said company to bring suits to collect the same; that the paid-up stockholders are justly and equitably entitled to have any balances due on stock subscriptions collected and appropriated to the debts of said company, and the surplus, if any, held in the treasury for the benefit of all stockholders.

And the Court is of opinion and decrees that a receiver be appointed for the Dunlap Coal, Iron and Railway Company. But the Court not being advised who is a proper and suitable person for

receiver, it is ordered that his selection, and the specification of the powers and authority he shall have, be, and these questions are, reserved for consideration and determination at a special term of the Court to be hereafter called, or at some regular term."

*Second Order.*—" Be it remembered, that on this the seventeenth day of July, A.D. 1893, it being a day of the special term of said Court, the above entitled cause came on for further decree on the motion of complainants for the appointment of a receiver of the property and assets of the defendant company—the Dunlap Coal, Iron and Railway Company—and for further orders herein; and the parties appearing, and the same being considered by the Court:

" It is ordered, adjudged, and decreed that Halbert B. Case be, and he is hereby, appointed receiver of all and singular the property—real, personal, and mixed—books, papers, minutes, records, notes, accounts, rights, demands, credits, and assets of every kind and description of said defendant, the Dunlap Coal, Iron and Railway Company; and the tenants of all such real estate are required to attorn and pay their rents and dues to said receiver; and said defendants and their agents, officers, and attorneys and representatives, are required to turn over and deliver to said receiver the possession of said real estate, and also all personal property belonging to said defendant company, including all notes, accounts, claims, contracts, · sub-

scription agreements and contracts, books, minutes, records, deeds, bonds, and papers belonging to said defendant company, and especially all contracts and agreements between said company and its stockholders, or any of them, or between its stockholders or any other person, or relating or pertaining to the subscriptions to the capital stock of said company.

"It is further ordered and decreed by the Court that all unpaid subscriptions to the capital stock of said defendant, the Dunlap Coal, Iron and Railway Company, be, and they are hereby, declared due and called in; and said receiver is hereby authorized and directed to proceed to collect in all such unpaid stock subscription contracts for that purpose, and authorized to bring and prosecute all suits and actions in law and in equity, in this Court or elsewhere, which he, in his discretion, deems proper or necessary to be brought or prosecuted in order to collect in such subscriptions; and said receiver is also authorized to bring and prosecute and defend any and all actions necessary or proper, in his judgment, to be brought, prosecuted, or defended; to collect any other debts, claims, or demands owing to said company, or to protect and preserve the property of said company from waste or destruction.

"Before entering upon the discharge of the duties hereby imposed upon him, said receiver will enter into bond, with security, to be approved by the Clerk of this Court, in the sum of $15,000,

payable to the said Clerk and Master, for the use of the parties as they may be entitled, and conditioned as required by law, and said bond will be filed herein. Said receiver will, from time to time, pass his accounts, and he shall, at the end of each month, pay in to the Clerk and Master of this Court all balances collected by him, after costs of collection, to be held by said Clerk and Master subject to the orders of this Court. The right is reserved to require additional bond from said receiver at any time the Court may deem the same necessary.

"It is further ordered by the Court that complainants, O. J. Sheridan and W. J. Rhoades, be, and they are hereby, required to enter into bond, in the sum of $5,000, with security, to be approved by the Clerk and Master of this Court, payable to said Clerk and Master, for the use of the parties as they may be entitled, conditioned to pay the costs and expenses incident to such suits as may be brought by said receiver to collect unpaid subscriptions for stock, in the event said receiver brings such suits and fails to collect enough thereon to pay the expenses incurred by him thereby; and said receiver will not bring any such suits until such bond is filed herein by said Sheridan and Rhoades.

"To this decree of the Court, defendant, Dunlap Coal, Iron and Railway Company, and C. F. Adams except, and are allowed to enter their exception."

The original bill was filed by Downing *et al.* November 18, 1892.

On December 31, 1892, O. J. Sheridan and W. J. Rhoades filed their petition to be made com·plainants, and were allowed to become such on giving bond for cost, which they at once did on same day.

Nothing was done under this bill. The original complainants agreed to a dismissal of it March 6, 1893, and in pursuance of that agreement, counsel thereby authorized to dismiss, filed written order to that purport.

Thereupon, Complainants Sheridan and Rhoades filed a bill and obtained appointment of a receiver, which is now sought to be superseded. The facts and attitude of the parties may be properly stated now, in connection with their bill.

. The complainants, O. J. Sheridan and W. J. Rhoades, are the holders of about one-fifth of the stock of defendant company. As such they bring this bill to have a receiver appointed to take charge of the assets and affairs of the company, collect its unpaid stock and pay its debts, and to wind up the corporation. They ask to be permitted to file it in their own behalf, and that of all other stockholders who may become parties, but no others have as yet joined them in the application.

They aver substantially that the Dunlap Coal, Iron and Railway Company, organized in 1890, with a subscribed capital stock of $500,000, of

which complainants took $100,000, and paid for it in transfer of option contracts and bonds for title of lands. Stock issued to them was non-assessable, but the remaining stock, nearly all, was assessable, and that some assessments had been levied and paid. It shows $320,000 subject still to assessment of 56⅔ per cent., amounting to about $180,000 (exact figures are stated, but are not material), and that the holders thereof are nearly all solvent. No question is made in the bill as to solvency of the corporation or its stock subscribers. It is shown that the corporation bought about 10,000 acres of iron land, 10,000 acres of coal land, and about 2,000 acres of town site land, aggregating in value $375,000, on which it now owes about $125,000.

Upon this showing its assets largely exceed its liabilities, and it is not sought to be subjected to a change of management or receivership on any theory of insolvency. It is proper to be observed here, too, that this is not a suit of any creditor complaining as to present obstruction or anticipated hinderance, by mismanagement, misappropriation of corporate property, or otherwise, to the collection of corporate obligations.

It is the suit of stockholders against the corporation. Stockholders alleging the high equity, it is true, of fully paid stock, and asserting rights as against unpaid stock, but still asserting a distinct and independent equity to that of creditors or third parties who have dealt with the corpora-

tion from without, and disconnected with it and
its share-holders. And this must be borne in mind
in considering such suggestions as are to be further
made respecting .the receivership, and the compe-
tency of the Court to make it, in the attitude of
the parties and condition of the record. .

In addition to facts heretofore set out as shown
in the bill (speaking, of course, in reference to
original Downing bill, to which Sheridan and
Rhoades had become parties complainant, and whose
allegations they repeat in supplemental bill, as well
as to showing in addition of the supplemental bill),
the complainants allege that the corporation is in
the control and management of its assessable stock-
holders, who compose and control its directory
and offices. It sets forth gross misconduct and
mismanagement, infidelity to official trusts, conspir-
acy to permit corporate property brought to sale
for their personal benefit; suits brought and judg-
ment confessed or permitted without resistance by
them, including the attorney of the corporation;
surrender up of lands, and compromise of claims
of vendors and stockholders, to the prejudice of
the corporation; refusal to have stockholders' meet-
ing, and refusal, on demand of complainants, to
call meeting and assess share-holders to settle lia-
bilities, including alleged unpaid taxes on the cor-
porate property.

It was further averred that several suits had
been instituted, and defendant was intending to
permit property to be sold and sacrificed; and that

arrangements had been perfected whereby its property was to be transferred.

Injunction was sought and allowed against the sale of the corporate property or any disposition of it, either by the suing creditors or the defendant corporation.

The case made in the bill, admitted in answer, or upon denial, being proven, manifestly calls for the interference of the Court in the appointment of a receiver, and discretionary action as to winding up the affairs of the corporation, the end sought by the bill. Conceding so much, we look into the condition when the appointment of a receiver is made, in connection with certain adjudications of the Court, to determine on this application for a supersedeas whether the Court could properly have made such appointment and adjudications as are to be noticed, in advance of final hearing. The case made in the bill was not, however, admitted in the answer, and there has been no evidence taken.

The defendant not only denied complainants' rights as paid-up stockholders, averring that their payment was in options and contracts which, in respect to iron ore lands, were valueless, and that they were put upon the company by false and fraudulent representations, but showed that, in another suit brought by complainants against defendant, it had a cross-bill pending to have it so declared, and complainants' rights, as stockholders,

adjudged invalid, and it set up same defense in this suit in answer.

It denied that its officials or directors had been requested to collect subscriptions; shows that the policy of delay and adjustment of claims of vendors by reconveyance, etc., was done with the full assent and agreement and active participation of complainants; shows that iron ore interests were valueless, and town site property greatly overestimated; that defendant was settling these claims, compromising and conveying some lands, and stockholders' interests would have to be re-adjusted in consequence; that complainants were in accord with them in this policy, and had expressed a willingness to reduce their stock on some fair and equitable basis; that this induced the policy pursued, and that failure to make calls on stockholders had thus resulted, and was consented to and largely brought about by the action, conduct, and advice of complainants.

It explains suits brought, and denies misconduct alleged; shows it was pursuing policy which was best for all, and which was necessitated by conditions and consented to by complainants, and that now to permit complainants to change that policy, and force collections of stock and acceptance of all property and sale of all instead of the settlement and compromise policy agreed upon and pursued, would work great wrong and injury to the corporation.

It admitted the assets and debts to be about

as charged, but showed that nothing like so much land and iron interest was bought as complainants aver, but says the amount actually bought fell very much short of the amount purported to be transferred in options and other contracts to the corporation by the complainants.

These were the issues made.

The question is as to the right of the minority to take the management out of the hands of the majority, to change a policy (set up in the answer as an agreed one) from compromise and reconveyance of worthless lands in settlement of corporate obligations therefor, to adjust between themselves resulting equities by surrender of stock, and so reduce interests and collections, to one of forced collection of all stock and no adjustment; payment of all obligations and no surrender of lands or compromise; recognition of complainants' stock in full and no adjustment as to that; affairs wound up now on the latter basis, and business ended, or upon that assumed by the majority, carried on by the company as a going and solvent corporation.

These were issues between minority and majority stockholders. If a receiver was appointed, the majority lost control of the property and the policy of the company. If stock was collected, it was against alleged understanding between the parties as to re-adjustment. It hindered, if it did not absolutely prevent, all efforts to arrange with vendors. It put the company to the necessity of reversing its policy as agreed upon by all, and made

Downing *v.* Dunlap Coal, etc., Co.

it yield to a minority, claimed to have assented to the acts complained of.

This being the effect, it is manifest that the appointment of a receiver, in itself, in view of these peculiar issues and at the instance of these complainants, means and adjudicates more than the designation of a person to take charge of and hold property pending litigation.

In the attitude of the parties, and in view of the issues between them, much of the lawsuit was settled by appointment of a receiver. It was practically settled that complainants' subscription and payment for stock was valid (though in issue), and they were entitled to call the corporation to settlement. It was settled that re-adjustment between themselves was not to be permitted, or not, at least, until defendant should collect all its stock.

But, added to the fact of appointment, the Chancellor adjudicates that the stock is due, and directs its collection. This (it must not be forgotten), not at the instance of creditors, but between stockholders themselves, fighting each other upon an issue that there was to be a reduction and re-adjustment, made in advance of the settlement of that issue, and of the taking of any evidence upon it, made on motion heard on affidavits.

There is no question that the decree would have been a proper one on a hearing upon the merits, had the issues been found in favor of complainants; but it was not competent for the Chancellor to make it in advance on motion. The

complainants were already protected by injunction. Defendant was restrained from selling its property, and creditors were restrained from doing so. The question left then at issue was as to collection and payment of debts, or compromise and re-adjustment alleged to have been agreed upon. The Chancellor decides that issue by deciding the stock is now due, and ordering collection.

There (as between themselves) could have been no objection to agreement upon the policy defendant insists was agreed upon. Creditors could, of course, complain, and might prevent, but they are not complaining, and it cannot be defeated by adjudication against it in advance, and collection forced.

The legal question as to the right to supersede such an order as the one made is the only question really existing. This we have attempted to settle in the form of stating results of our consideration.

There is of course no controversy among counsel, such as present this case, as to what the law is. The question of controversy is only as to the application of recognized law to particular facts.

That under the Code this Court has no power to supersede an order granting or dissolving an injunction (7 Cold., 217; 1 Heis., 769; 1 Lea, 80); nor to supersede an order refusing to quash an attachment (9 Bax., 561); nor to supersede an order in a proper case for appointment of a receiver, merely to take hold and dispose of prop-

erty for benefit of parties in litigation pending the suit; nor to supersede an order already executed (2 Leg. Rep., 287; 3 Lea, 50; 1 Lea, 394, 531; 11 Lea, 228) is not debated or debatable. But it is equally settled that where upon the issues a receiver could not have been appointed at all, or until the issues were settled which justified it, or other adjudications were made which affirmatively settled rights, and which orders were being, or about to be, executed, to the prejudice of parties still litigating these issues, then the order appointing a receiver may be superseded, and such adjudications in connection therewith as are beyond the competency of the Court to make in advance of a trial. 3 Bax., 204–391; 12 Heis., 506; 8 Bax., 534; 1 Leg. Rep., 363; 2 Lea, 154.

The question is as to the effect of the decree at the stage made, and in the condition of the record. It is not whether the order was erroneous, but whether one to be enforced actively, and which may deprive the party complaining of rights, of money or property in advance of the final hearing. All this Court can do on application for, or on motion to discharge supersedeas, is to see that the order complained of was of this character. 8 Lea, 465.

The power is limited to such an order or decree as determines rights of the parties about which they are litigating, in advance of a hearing, and which is susceptible of being executed by some affirmative action or process.

Take this case: If it be the right of this corporation, under agreement of its contending stockholders, which was being carried out by its directory, to proceed to compromise with vendors and re-adjust with share-holders, upon diminished value and then collect, it cannot be deprived of that right in this litigation by a decree suspending or abrogating that policy and forcing collection now.

If it be a right of the company to deny complainants' power to force it to collect, because complainants are not good faith holders of its stock, it cannot be deprived of that right, and forced to collect first and try afterward.

It has been earnestly pressed upon us that the case of *Baird* v. *The Turnpike Co.*, 1 Lea, 394, is authority denying the right of this Court to supersede such an interlocutory order as here presented, upon the ground that the facts were similar. That was a petition of stockholders (alleged) against the president, directors, and officers of the company, and (of course) making the company a defendant, to have complainants' rights declared, and call defendant to account for income and profits of road. It does not appear that complainants were not the holders of practically all, or, at least, a majority of the stock. It does not appear that any defendant raised an issue as to their right as stockholders or to call defendants to account. It does not appear that the action of the corporation was involved at all. It was a contest, as stated,

of stockholders with their mismanaging officers; and still less does it appear that it was an issue in that case that the action taken by defendants was in pursuance of a settled policy, assented to by complainants, and pursued by agreement.

The adjudication in that case was the ordinary and proper one appointing a receiver and turning over property at the instance, so far as we can see, of its practical owners. The effort was to supersede it after it was executed. Here the effort is by a minority, through the Courts, to take without a hearing, control of a solvent corporation out of the hands of the majority, revoke alleged agreements in advance of a trial, whether made or not, reverse a deliberate policy asserted by defendant to have been adopted by assent of complainants, without giving defendant a chance to prove it; and all upon the theory that, because it is within the competency of the Court to appoint a receiver in advance upon issues made or tendered requiring it, and, when so made, such order cannot be superseded, therefore, there can be no supersedeas in any case where minority stockholders have obtained such an appointment in a suit against the majority, no matter what the issues may be, and what may result from the adjudications in connection with his appointment.

Such a ruling would be very unfortunate in this day of multiplying corporations. It would practically turn them all over to minorities, and, as a result, wind them all up in receiverships. The

majority of a solvent corporation must be allowed to control it until it be alleged and admitted or proven that it is so rashly or fraudulently or improvidently managing its affairs as to injure unfairly the minority. Then it may be deposed, and the Courts assume control. But, in this character of case, it needs a proper showing in the bill, sustained by proof, to force such a result; for, after all, the result thus obtained is the merit of the controversy, and needs to be decided only at its end.

Defendant is entitled to the supersedeas prayed for, and I direct its issuance upon execution of bond in the penalty of $10,000, conditioned to pay complainants such sum as the Court may decree on final hearing, and pay all such cost and damages as complainants may sustain.