IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1902.

TROUGHBER *v.* AKIN.

(*Nashville.* December Term, 1902.)

1. **RECEIVERS.** How applied for.

Applications for receivers may be made by bill or petition or even on motion. Where a case is already pending in which the property is involved, the proper practice is to present the matter by petition or motion supported by affidavit, in that cause. (*Post, p.* 462.)

Cited: Gibson's Suits in Chancery, secs. 856, 857; Henshaw *v.* Wells, 9 Humph., 568, 570.

2. **SAME.** Order appointing not invalid because entered under style of dependent rather than the original cause, when.

Where, during the pendency of a suit to establish title to certain land, complainant therein brought another suit, in aid of the original, for the appointment of a receiver of the land pending the litigation, and the court treated the application as made by motion supported by the record in both suits, and considered both such records, the order of appointment, showing these facts, is not invalid because entered under the style of the dependent cause rather than the original. (*Post, pp.* 461, 462.)

3. **SAME.** Defendant filing counter affidavits has sufficient notice of application for.

An order appointing a receiver of lands *pendente lite*, made on application of complainant in a suit involving the title thereto, is not erroneous for want of notice where the defendant is present at the hearing of the application and filed counter affidavits resisting same, which were considered by the chancellor. (*Post, pp.* 462-463.)

4. **SAME.** Objections to matters of form in application for, not reviewable on collateral attack in the supreme court, when.

Where the court has power to appoint a receiver under the facts stated, objections to mere matters of form, such as question the form of the affidavit to the bill or the seasonableness of the application, will not be reviewed by the supreme court when collaterally presented as upon an application for a *supersedeas*, any more than any other interlocutory order, as an order granting or dissolving an injunction. (*Post, p.* 463.)

Cases cited: Baird *v.* Turnpike Co., 1 Lea, 394; Bramley *v.* Tyree, 1 Lea, 531; Johnson *v.* Hanner, 2 Lea, 11; Hamilton *v.* Wynne, 3 Tenn. Cas., 34; Roberson *v.* Roberson, 3 Lea, 50; Enochs *v.* Wilson, 11 Lea, 228.

5. **SAME.** Sufficiency in law of grounds for appointment, reviewable by supreme court, when.

It is settled law in this State that a receiver may be appointed to take charge of lands pending litigation involving the title,

Troughber v. Akin.

.upon a proper state of facts being made to appear showing the necessity for such action, but the action of the lower courts in such cases is subject to review by the supreme court upon application for a *supersedeas* or upon motion to discharge a *supersedeas* granted by one of the judges of the supreme court and upon such review the supreme court will inquire into and determine the sufficiency in law of the grounds on which the judge of such lower court acted. (*Post, pp.* 463-476, and especially 475-476.)

Cases cited and reviewed:   Richmond *v.* Yates, 3 Baxt., 204; Morford *v.* Hamner, 3 Baxt., 391; Davis *v.* Reaves, 2 Lea, 649; State *v.* Allen, 1 Tenn. Ch., 512; Cassetty *v.* Capps, 3 Tenn. Ch., 524; Blake *v.* Dodge, 8 Lea, 465; Downing *v.* Dunlap, etc., Co., 93 Tenn., 221; Pearson *v.* Gillenwaters, 99 Tenn., 446; Cone *v.* Paute, 12 Heisk., 508.

**6.  SAME.  Great weight given to conclusion of lower court.**
In determining whether the facts exist as found by the lower court, its conclusions will be given great weight by the supreme court.   (*Post, p.* 476.)

Case cited:   Cone *v.* Paute, 12 Heisk., 508.

**7.  SUPERSEDEAS.  Will be denied, where appointment of receiver is in accord with "the ends of substantial justice." Case in judgment.**
Defendant was in possession of land in controversy, had committed waste thereon, destroyed valuable timber and by improper care had greatly depreciated its value, and was insolvent.   Complainant's right to the land had been twice determined in his favor on the merits, the findings in each instance having been set aside upon a technicality.   On complainant's application for a receiver, defendant admitted cutting the timber, denied waste in general terms, and the alleged depreciation of the land; he also denied the charge of insolvency, but admitted that he had mortgaged all of his personal property to his son-in-law to secure a debt he claimed to be just.   Defendant owned no other property except a twenty-eighth interest in the land in controversy.   Receiver was appointed by the chancellor, and on application for a *supersedeas* it was—

HELD:   The action of the chancellor seems to have been dictated by a sound discretion and was in accord with "the ends of substantial justice" (Code (S) sec. 5549) looking

only to the preservation of the property pending the litiga-
tion, for the benefit of the party entitled thereto, and, there-
fore, the *supersedeas* was denied.  (*Post, pp.* 454-479, and es-
pecially 476-479.)

---

FROM ROBERTSON.

---

Application for *supersedeas* to restrain execution
of an order of Chancery Court of Robertson County
appointing a receiver to take charge of and rent out
the lands in controversy.

J. W. STOUT, Chancellor.

H. C. TRUE, JOHN F. HOUSE and JOEL B. FORT, for
Troughber.

A. E. GARNER and L. L. COBBS, for Akin.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is a proceeding to obtain a *supersedeas* to re-
strain the execution of an order entered in the chan-
cery court of Robertson county, appointing a receiver
to take charge of and rent out the lands in controversy
in the case of *E. E. Troughber* v. *Stephen Smelser
et al.,* pending in that court.

To properly understand the matter, it is necessary
to state the following facts:   On the 15th of April,
1898, a bill was filed in the chancery court of Robert-
son county by E. E. Troughber against J. T. Akin and
others for the purpose of setting up a will which it was

Troughber v. Akin.

alleged that one G. W. Smelser had executed in favor of the complainant while he was of sound and disposing mind, and which he had subsequently been caused to destroy, while of unsound mind, by the defendant J. T. Akin and his wife, Emmaline Akin, and also for the purpose of setting aside a deed which it was alleged the said Akin and wife had induced the said G. W. Smelser to make to them through undue influence, and while he was in said state or condition of unsound mind; also for the purpose of enjoining certain proceedings instituted by Stephen Smelser and Mary A. Cook, as heirs at law of G. W. Smelser, to have the said Akin deed declared void, and to have themselves adjudged entitled to a portion of the land as heirs at law of G. W. Smelser. Troughber claimed all of the land, consisting of several tracts, as devisee, to the exclusion of the heirs at law and of the said grantees under the Akin deed; also all of the personal property which was likewise bequeathed in the will, and which Akin and wife had obtained from G. W. Smelser by a bill of sale at or about the same time they obtained the deed to the land.

The prayer of the bill was that the court should set up and establish the will referred to as the last will and testament of G. W. Smelser, deceased, and that it should then be certified to the county court of Robertson county, to be legally recorded as the said last will, to the end that letters testamentary might issue, and that the provisions of the said will might be fully

carried out; also that the said Akin deed might be set aside, and the bill of sale of the personal property, and that Akin and wife might be enjoined from committing waste upon the land, and held liable for such waste as had already been committed, and for the value of the personal property appropriated and converted by them; also that Stephen Smelser and Mary A. Cook be enjoined from the further prosecution of the suit brought by them, above referred to.

Answers and other pleadings were filed, and a decree finally rendered in the chancery court. From this decree an appeal was prayed and granted to this court, and at the December term, 1901, was referred to the court of chancery appeals for examination and decision.

That court found the facts as claimed by complainant, Troughber, but was of the opinion that a final decree could not be rendered in favor of Troughber, because he had asked for a trial by jury in the chancery court, and had been refused by the chancellor, and that the cause should be remanded to the chancery court for the said trial by jury. On appeal to this court, the decree of the court of chancery appeals was affirmed.

When the cause again reached the chancery court, a jury was impaneled, and, in response to issues made up and submitted to them, found that G. W. Smelser executed the will as claimed in the bill; that he subsequently destroyed that will, while of unsound mind;

that he was unduly influenced to destroy it; that he was unduly influenced by Akin and wife to execute to them the bill of sale of the personalty and the deed to the realty; and that he was of unsound mind when the latter papers were executed.

This verdict was rendered on December 11, 1902. Thereupon the defendant J. T. Akin moved for a new trial, and the hearing of the motion was continued over until a future day of the term.

On January 3, 1903, the motion was determined in favor of Akin, on the ground that his wife, Mrs. Emmaline Akin, had died before the hearing of the cause, and the trial had been had without revivor as to her heirs at law, and that the latter were necessary parties.

On the same day Stephen Smelser and Mary A. Cook asked leave of the court to withdraw all of the defenses, to Troughber's bill, and this was permitted, and judgment *pro confesso* was entered against them.

On December 12, 1902, after the verdict of the jury was rendered, and before the motion for new trial had been disposed of, complainant, Troughber, filed the bill in the present case.

In this bill he recited the substance of what has been above stated, down to the rendering of the verdict of the jury, and then alleged the following facts, viz.: That Akin had had possession of the lands devised to complainant, and had taken the rents and profits, since the death of G. W. Smelser, in January, 1896; that

the rentals were worth two hundred and fifty dollars per year, and that Akin was indebted to him in the sum of one thousand and seventeen hundred dollars on account of these rents, and in an additional sum for the value of personal property which he had appropriated to his own use, and which had been bequeathed to complainant—in all, the sum of two thousand dollars, or over, and that J. T. Akin was wholly insolvent; and that he was about to fraudulently dispose of his crops raised on said land, and of a one-twenty-eighth interest in said lands which he had purchased from one D. O. Andrews, for the purpose of defrauding the complainant out of the said sum due to him, and also to escape the payment of the costs of the cause. It was alleged in the bill, on information and belief, that, when the court of chancery appeals decided the case against Akin, he had removed a portion of his personal property into the State of Kentucky, and had disposed of it, for the purpose of escaping the payment of the rents and profits to complainant, and "that his son-in-law, George Miller, voluntarily paid the costs, which were adjudged against defendant Akin by the supreme court, and publicly stated that he was conducting the lawsuit, and proposed to hold the land, and use the rents and profits from the same for the purpose of paying the expenses of the said litigation."

It was further alleged in the bill, in positive terms, that defendant Akin, since he had been in possession

of the land, had used it in so reckless a manner that it was washed in holes and gullies, and was worth hardly half as much as it was when he entered upon it, and that he had cut a large amount of valuable timber.

The bill also referred to the motion for a new trial above mentioned as an evidence of the fact that the defendant Akin had resolved to remain in possession of the land and use it in defiance of right and justice.

The prayer of this bill was for an attachment to issue for the purpose of seizing the crops before mentioned, and also the one-twenty-eighth interest in the land purchased from D. O. Andrews, to secure the payment of the amount claimed for rents and personal property converted, and also for a receiver to take charge of the said lands involved in the first case— that of *E. E. Troughber* v. *Stephen Smelser et al.*

It was alleged that, if a receiver should not be appointed, the land would be very greatly injured and lessened in value.

This bill was sworn to on "knowledge and belief."

On January 3, 1903, the day the motion for new trial was determined in the parent case, Troughber filed an amended bill, which contained the additional allegation that on May 5, 1902, defendant J. T. Akin had mortgaged all of his personal property of every description to one George Miller to secure a note in the sum of five hundred dollars, and that both the note and mortgage were fictitious and fraudulent, and made for the purpose of defrauding the creditors of

Akin, and especially for the purpose of defeating complainant's claim for rents and for the costs of the litigation in the case of *E. E. Troughber* v. *Stephen Smelser et al.* A copy of the mortgage was exhibited.

This bill was sworn to on "knowledge, information, and belief."

On the same day Akin filed an affidavit in the cause, containing the following denials and averments, viz.: "That he is not insolvent; that he has not injured the land; that he has not tried to, nor has he wrongfully cultivated the said land; that he has not cultivated the land so as to make gullies in it; that he does not owe to complainant a cent for rents; that the verdict of the jury has been set aside; that he has not committed waste; that the land is more salable now than when he got it; that he has been in possession of the land since January, 1895; that the mortgage to George Miller is for an honest debt, and was not made to hinder and delay creditors; that he has improved the land greatly; and that he has a legal and valid defense to the bill filed in this cause."

The chancellor thereupon appointed a receiver to take charge of the lands and rent them out, first requiring a bond of the complainant. The decree states that the receiver was appointed on motion of the complainant, and that this motion and the action of the court were based upon the bill and amended bill in the present case, and the mortgage made by Akin to Miller, exhibited with the amended bill, the affidavit

of Akin, "and the whole record in the case of E. E. Troughber against Stephen Smelser and others, pending in this court, and the court granted said motion for a receiver, and appointed said receiver after due consideration of the same."

The petition now before us was filed for the purpose of having the said order superseded, and is accompanied by the record in the case of *E. E. Troughber* v. *J. T. Akin,* as well as the record in the case of *E. E. Troughber* v. *Stephen Smelser et al.;* the latter appearing in a transcript of more than nine hundred typewritten pages.

Both of the cases are still in the lower court. Nothing is here, technically speaking, except the application for *supersedeas.*

We are mindful of the fact that the consequences of our decision upon this matter can not be otherwise than grave and important to the respective parties, and we have given as full consideration to the questions involved as we could in the time at our command.

Numerous errors are assigned that go merely to the form of the proceeding below. These we shall dispose of very briefly.

It is said that the appointment was made in the present case, and not in the original case in which the land was sued for. This is immaterial. The present suit was brought only in aid of the original suit, and to enforce rights growing out of that suit. The en-

tire litigation was treated as one by the chancellor, and both records referred to. The bill in the present case was, among other things, filed expressly for the purpose of having a receiver appointed for the property involved in the prior pending litigation. Application may be made by bill or petition (Gibson's Suits in Chancery, secs. 856, 857), or even on motion (*Henshaw* v. *Wells,* 9 Humph., 568, 570); but, when a case is already pending in which the property is involved, the proper practice is to present the matter by petition or motion supported by affidavit in that cause.

It appears that, when the chancellor referred to the application in the decree, he spoke of it neither as having been made by petition nor by bill, but as if made by motion supported by the record in both causes. The real, substantial thing is that both causes were in the same court, and referred to the same subject-matter, only in different aspects; and the chancellor had both before him, together, and also had jurisdiction of the property involved, and his decree, appointing the receiver shows these facts. Under these circumstances, if he otherwise had jurisdiction to make the order, it could not be held that his jurisdiction was defeated by the fact that the order was entered under the style of the dependent cause, rather than under the original.

It is said the appointment was made without notice to Akin. This is met by the fact that Akin seems to

have been present, and he filed a counter affidavit,.
which the chancellor considered.

It is said that Akin's affidavit fully met the allega--
tions of the bill; also that the affidavit to the bill was.
not sufficient in form; that the receiver was not season-
ably applied for, the bill in the original cause having
been filed April 15, 1898, and the application not;
having been made until January 3, 1903.

The foregoing are all matters of mere form, not
going to the jurisdiction of the chancellor to appoint.
the receiver, and can not, in general, be considered!
when collaterally presented, as upon the present ap--
plication.    If the chancellor had the power to appoint
a receiver under the facts stated, this court could.
not, in general, review, on an application for a *super--
sedeas,* his irregular exercise of that power, any more-
than it could  review any other interlocutory order,.
as an order granting or dissolving an injunction.
*Baird* v. *Turnpike Co.,* 1 Lea, 394; *Bramley* v. *Tyree,.*
1 Lea, 531; *Johnson* v. *Hanner,* 2 Lea, 11; *Hamilton* v..
*Wynne,* 3 Shannon's Tenn. Cas., 34; *Roberson* v. *Rob--
erson,* 3 Lea, 50, 52; *Enochs* v. *Wilson,* 11 Lea, 228,.
232, 233.   The appointment of a receiver is ordinarily
in the nature of granting extraordinary process, for
it neither settles nor  prejudices rights,  and is only
resorted  to for the  purpose of  preserving the·
property pending the litigation.   Id.

The real question for determination is whether the-
appointment of a receiver in the pending litigation.

was a true exercise of the right of the chancellor to preserve the property for the benefit of whomsoever may be finally successful in the suit for the property, or whether it was really a decision upon the merits of the controversy, by interlocutory order, in advance of a final decision of the cause. The settlement of the question requires an examination of some of our decisions:

*Richmond* v. *Yates,* 3 Baxt., 204. In this case it appeared that Yates had caused to be levied on and sold certain land as the property of Mrs. Richmond's husband, and had become the purchaser at the sheriff's sale. Mrs. Richmond, being in possession of the land, and claiming to be the owner of it by reason of its having been bought and paid for with her money, filed her bill against Yates to assert her right thereto, and contesting his claim. Yates thereupon filed a cross bill, making the husband of Mrs. Richmond a party thereto, but not Mrs. Richmond herself; his purpose being, we assume (the facts not being fully stated in the opinion), to obtain possession of the property under the sheriff's deed. Yates proceeded to take the testimony on his side, and having secured enough, in his opinion, to establish his right to the land, he asked the chancellor for a receiver. The receiver was accordingly appointed, and the appointment superseded by an application to one of the judges of this court at chambers. Subsequently the matter came up on motion to discharge the *supersedeas;* the cause still pend-

ing in the court below, not being ready for trial.    In this state of the matter, this court, speaking through Nicholson, C. J., said: "To discharge the *supersedeas* under such circumstances would be tantamount to deciding the question of title upon an *ex parte* view of the proof.   The same reason exists now which induced the granting of the *supersedeas*.   It is a contest as to the title of the land, the complainant being in possession; and, until it is determined upon the hearing that her title is invalid, she can not be disturbed in the possession."

*Morford* v. *Hamner,* 3 Baxt., 291.   This is a case usually cited upon the subject we now have in hand, but the only point decided in it was that the vendor's lien does not extend to the rents, and the vendor can not have a receiver appointed for the purpose of impounding the rents, and applying them to the payment of the purchase-money debt.   The court said: "It is no part of the contract of sale, either express or implied, that the vendor shall appropriate anything but the land itself by sale for the satisfaction of his purchase money; and by the contract the purchaser is entitled to the possession until the land shall be sold to satisfy the unpaid purchase money.   Upon this ground the *supersedeas* in the present case was granted, and for the same reason the motion to discharge it is disallowed."   See, however, the reasoning in *Moore* v. *Knight,* 6 Lea, 434-439.

*Davis* v. *Reaves,* 2 Lea, 649.   This was an applica-

tion for the appointment of a receiver in this court in a suit which was said to be, in substance, an ejectment suit. The substance of the decision was that the rule that no receiver could be appointed in such cases, announced in *Richmond* v. *Yates,* supra, was not an inflexible one, but that a very strong showing must be made before such appointment could be had. In that case it appeared that the complainants had succeeded in the court below, and the defendants appealed. Speaking to the motion for the appointment of a receiver, the court said: "Even if the decree below for the complainants raised a presumption in their favor, a questionable point, in view of the settled doctrine of this court that the appeal vacates the decree, it would not alter the general rule. The burden would still be on the applicant for a receiver to establish a proper case, and the law certainly requires, in an ejectment suit, a strong showing to justify interference with actual possession. Such a showing obviously demands that the court should be reasonably satisfied that the recovery, on the basis of the decree, would be in favor of the complainant, and for some definite amount, and that this recovery would be lost unless the receiver was appointed. There is no such showing."

*State* v. *Allen,* 1 Tenn., Ch., 512. In this case Judge Cooper used the following language, which expresses the substance of the case: "The court is very slow to appoint a receiver of realty in the peaceable

possession of defendants under a claim of right, and where the contest is between claimants of the legal title. For, the court can not interfere with the legal title, unless there be some equity by which it can affect the conscience of the party in possession. *Knight* v. *Duplessis,* 1 Ves., 324; *Willis* v. *Corlies,* 2 Edw., Ch., 281; *Huguenin* v. *Basely,* 13 Ves., 105. And such interference is, to a certain extent, giving relief, and, upon a preliminary motion, depriving the defendant of the present use and enjoyment of the estate, and, *pro tanto* and *pro tempore,* giving a decision against him. *Houlditch* v. *Lord Donegall,* 1 Beatty, Ir. Ch., 402. The property was not, however, at the filing of the bill, in the peaceable possession of the defendants," etc.

*Cassetty* v. *Capps,* 3 Tenn. Ch., 524. The syllabus fully expresses the substance of the case, and is as follows: "Equity will not, pending a suit for a sale of land for division among cotenants, interfere, by the appointment of a receiver, with the lawful possession of one of the tenants, it not appearing that he disputes the title, or interferes with the possession of his cotenants, especially if there is no sufficient averment of insolvency."

*Blake* v. *Dodge,* 8 Lea, 465. The bill in this case was filed to close up a partnership in a race mare. The mare was to be trained by the defendant, at certain wages, and when trained sold, and the profits divided. In the court below an order was entered to sell

the mare, whether through a receiver or otherwise does not appear. Upon application to one of the judges of this court, the order was superseded. Subsequently, upon a motion to discharge the *supersedeas* the court said: "The order of sale deprives the defendant of his property before the animal is trained so as to insure the expected profits. The order may not be erroneous, and yet it certainly accomplishes in advance all the purposes of the final decree. It falls clearly within the statute."

*Downing* v. *Dunlap Coal & Coke Co.,* 93 Tenn., 221 (24 S. W., 122). The syllabus states the substance of the case fully, and is as follows: "A *supersedeas* is properly granted by a judge of this court to stay an interlocutory order of a chancery court, based alone upon bill, answer, and *ex parte* affidavits, placing a solvent and going corporation in the hands of a receiver pending a suit by the minority of its stockholders to wind up its affairs, thereby determining finally, in advance of a hearing on the merits, issues made by the pleadings, vital to the interest of the parties, and wresting the management of the corporation from the majority of its stockholders," etc.

*Pearson* v. *Gillenwaters,* 99 Tenn., 446, 456 (42 S. W., 9, 63 Am. St. Rep., 844). One of the questions in this case was whether at the instance of a purchaser of real estate at a chancery sale, and after confirmation, a receiver could be appointed to take charge of the land and rent it out, pending an appeal from the

decree of confirmation. The court held that such a receiver could not be appointed, on the ground that the appeal vacated the confirmation, and the owner of the land was entitled to the rents until the final confirmation, not on any question of disturbing possession, merely, pending a litigation.

There are some general observations in some of these cases and in others that should be noticed here.

In *Downing* v. *Dunlap, etc., Co.,* supra, it is said (page 235, 93 Tenn., and page 125, 24 S. W.) : "The question is as to the effect of the decree at the stage made, and in the condition of the record. It is not whether the order was erroneous, but whether one to be enforced actively, and which may deprive the party complaining, of rights of money or property, in advance of the final hearing. All the court can do on application for or on motion to discharge a *supersedeas* is to see that the order complained of is of this character. *Blake* v. *Dodge,* 8 Lea, 465. The power is limited to such an order or decree as determines rights of the parties, about which they are litigating, in advance of a hearing, and which is susceptible of being executed by some affirmative action or process."

In *Johnson* v. *Hanner,* supra, it is said : "The appointment of a receiver, as the court has recently said, is ordinarily in the nature of extraordinary process, for it neither settles nor prejudices rights, and is only resorted to for the purpose of preserving the property in controversy, pending the litigation, for

the benefit of the successful party. *Baird* v. *Cumber-land & Stone River T. P. Co.,* 1 Lea, 394. All of our circuit judges and chancellors are by statute author-ized to make such an appointment in vacation as well as in term time. Code, secs. 3948, 4452. Such an appointment is therefore clearly within the competency of the court, and an order in term can not be revised by this court by a *supersedeas* under the Code, sec. 3933. *Bramley* v. *Tyree,* 1 Lea, 531. Nor, *a fortiori,* a fiat making the application at cham-bers."

In *Enochs v. Wilson,* 11 Lea, 228, 233, it is said: "An order appointing a receiver merely for the pur-pose of taking possession of property in litigation, and managing it for the interest of all parties, is in its very nature interlocutory, no matter at what stage of the cause it may be made. All of the courts of this State, and the judges thereof, are clothed with the power to appoint receivers 'for the safe-keeping, col-lection, management, and disposition of property in litigation,' when necessary to the ends of substantial justice. Code, secs. 3768, 3948. Such an or-der can neither be appealed from directly, nor super-seded under the special provisions of the Code author-izing the *supersedeas* of certain interlocutory orders. Code, sec. 3933. Such orders, as well as all other proceedings in a chancery cause, are brought up for revision by a general appeal, but remain in force unless otherwise ordered by this court," etc.

Troughber v. Akin.

In this connection, it is proper to introduce the case of *Cone v. Paute,* 12 Heisk., 506. The complainant was a judgment creditor of Paute and filed his bill, after return of execution *nulla bona,* to reach and subject the equitable interest of Paute in the property, and with a view thereto, sought the foreclosure of prior deeds of trust, seeking to reach the surplus after the satisfaction of the prior debts. To this end, he prayed for a receiver *pendente lite.* The chancellor made the order upon the ground that the defendant, Paute, was in possession of the property involved in the controversy, receiving the rents and profits, but failing to remove and keep down the accumulating incumbrance of State, county, and city taxes, and in the order directed that the property, lands, etc., be taken out of the possession of the defendant, Paute, and placed in the hands of the receiver, and that the latter appropriate the rents and profits to the payment of taxes accrued and accruing.

Speaking to this order, this court said, through Nicholson, C. J.: "This is such an interlocutory decree as may be superseded where a proper case is made out." But upon examination (page 508, 12 Heisk.), the court held that the chancellor acted judiciously in making the order, and declined to interfere with it.

There are some general conclusions to be deduced from the foregoing authorities, which will be found useful in enabling us to reach a correct solution of

the special case we have for decision. They are as follows, viz.: That the power to appoint receivers belongs to all of the courts of the State, and to the judges thereof, and orders appointing receivers belong to the class of interlocutory orders, and are not, in general, reviewable upon application for *supersedeas,* any more than other interlocutory orders, such as those granting or dissolving injunctions; that interlocutory orders, however, may be so erroneously passed and drawn as really to contain elements proper only in a final decree or judgment, and when so drawn, and when in addition, they are of a kind capable of active enforcement, they may be reviewed upon application for *supersedeas,*—and it may be deprived of their obnoxious features, being allowed in other respects to remain in force; that before interlocutory orders can be restrained, upon such application, they must have both of the features above referred to, that is, must trench upon final relief, and must be of a nature to be actively enforced; neither feature alone being sufficient to justify interference, because, even if the order trenches upon final relief, it may await correction upon appeal, if not of a nature to be actively enforced, and, on the other hand, it may be of a nature to be actively enforced, yet not amenable to *supersedeas,* because it does not have the color of final relief; that all orders appointing receivers require and necessitate action, that is, from their very nature, must be actively enforced, to be at all efficacious, yet they are not

on that account open to review on application for *supersedeas,* but, before becoming so reviewable, must go further, and contain some element that should only appear in a decree granting final relief, that is, a final decree upon the merits of the controversy involved in the pleadings.

The race-mare case *(Black* v. *Dodge,* supra), and the case brought by the minority stockholders of a corporation against the corporation and the majority of the stockholders (*Downing* v. *Dunlap, etc., Coal Co.,* supra), for the purpose of obtaining control of the corporation, and wherein the said minority stockholders were given immediate control in advance of final hearing by the chancellor, by means of and in the form of an order, appointing a receiver of the corporation, are examples of the unlawful use of the power belonging to all the courts of this State, and to their judges, to appoint receivers, because the order referred to really determined in advance of final hearing matters that should have awaited and should have been reserved for that hearing.

It seems that orders disturbing the possession of real estate pending a litigation concerning that class of property, when the title is involved in the litigation, are always to be treated as, if not wholly pertaining to final relief, yet in the nature of final relief, and are always reviewable, upon application for *supersedeas;* but notwithstanding they are of such a nature, this court, upon so reviewing them, will

allow them to stand until final hearing, if it can be seen, under the facts of the special case, that good and substantial reasons appear for such action, and that no abiding injury is done to the party deprived thus temporarily of possession. *Cone* v. *Paute,* 12 Heisk., 508.

In the case of *Richmond* v. *Yates,* supra, it does not appear that any reason whatever was made to appear for the appointment of the receiver, further than that the chancellor was of the opinion, apparently, from the testimony introduced by the defendant and cross-complainant in that case, that he was entitled to the land, and that the original complainant had no interest in it; and this in advance of any testimony offered in the cause by the complainant, and while she yet had the legal right to present her testimony—a clear case of final action in the form of an order appointing a receiver.

In the case of *Cone* v. *Paute,* supra, the reason given was that the taxes were not kept down, but were being allowed to accumulate and incumber the property, and this was held to be a sufficient reason.

In *Davis* v. *Reaves,* it was assumed as settled law that a receiver in such cases could be appointed upon a proper showing. It seems that the question there was as to whether the receiver should be appointed to protect rents, and the court, not being able to see that any special amount would be due, declined to make the appointment.

In *State* v. *Allen,* supra, it was said that the court would be very slow to appoint a receiver in this class of cases, but this implies that upon a strong showing the appointment might be made.

In *Cassetty* v. *Capps,* supra, the receiver was denied; that being really, as stated by Cooper, J., an ejectment suit brought by one tenant in common against the other; but it was intimated that, if the defendant had denied the rights of his cotenants to their shares of interests in the land, and there had been a sufficient allegation of insolvency, a receiver might be appointed in such a case.

*Pearson* v. *Gillenwaters,* supra, does not bear upon the special phase of the matter now under discussion, and need not be further noticed.   The same is true of *Morford* v. *Hamner,* supra.

So, we think, it may be stated as a settled rule in this class of cases that a receiver may be appointed to take charge of the land in controversy pending the litigation over the title, upon a proper state of facts being made to appear, showing the necessity for such action, but that the action of the lower courts in such cases is subject to review by this court upon application for *supersedeas,* or upon motion to discharge a *supersedeas* granted by one of the judges of this court, and that upon such review this court will determine the sufficiency, in law, of the grounds on which the judge of such inferior court acted, and will either affirm or disaffirm, as it may be

found by this court that such grounds are sufficient or the contrary. But in determining whether the facts exist as found by the lower court, this court will give great weight to the conclusion of the lower court. *Cone* v. *Paute,* 12 Heisk., 508.

Before applying the foregoing principle to the facts of the present case, it is proper to observe that it is not intended to in any wise impair the rule that this court has the right, on final appeal or writ of error, to review orders appointing receivers, just as it has power to review any other interlocutory order of a lower court, as well as the final decrees and judgments of such courts (such were the cases of *Henshaw* v. *Wells,* 9 Humph., 568, 570; *Williams* v. *Bartlett,* 4 Lea, 624, 625; *Bidwell* v. *Paul,* 5 Baxt., 693), or to impair the rule that the judges of inferior courts have the right to appoint receivers of personal property, for care, management, and safe-keeping, and that such orders can not be interfered with or restrained by this court upon petition for *supersedeas,* or the rule that the judges of inferior courts have the right to appoint receivers in cases where mortgages have been executed upon real or personal property, and a showing is made that it is necessary for the preservation of the property that a receiver should be appointed, or it is made to appear that the corpus of the estate is insufficient to pay the mortgage debt, and the mortgagee is insolvent (*Williams* v. *Noland,* 2 Tenn., Ch., 151), or that taxes are unpaid and accumulating, and that in such

cases this court can not restrain such orders upon application for *supersedeas* (*Williams* v. *Bartlett,* 4 Lea, 624, 625; *Bidwell* v. *Paul,* 5 Baxt., 693; *Bramley* v. *Tyree,* 1 Lea, 531-533). But, as already stated, neither the inferior courts, nor the judges thereof at chambers, can appoint receivers of either real or personal property, whether under mortgage or not, by orders containing provisions applicable only to final decrees or judgments, and capable of active enforcement; and this court can, upon application for *supersedeas,* examine any interlocutory order of the inferior courts for the purpose of determining whether it contains such objectionable features, but, upon finding that it is not amenable to such objection, this court can do no more than to dismiss the petition and adjudge the costs thereof. On the contrary, if upon such examination the objectionable features referred to are found to exist, the court will restrain their enforcement.

Cases involving title to real estate, as we have already pointed out, stand in a distinct class. This special phase of the question we have already discussed. To this class belongs the case we now have for decision, and we shall now briefly apply the principle ascertained to the facts of this case.

The facts on which the chancellor based his action were, in substance, that the complainant had shown an equity entitled to consideration upon an application for the appointment of a receiver, in the fact

that the merits had been twice determined in his favor, the finding in each instance having been set aside upon a merely technical point; that the defendants had committed waste upon the land, in the destruction of valuable timber; that the defendants had so cultivated and managed the land as that it had washed into gullies and holes and had been greatly lessened in value, and would probably continue to be injured if allowed to remain in their possession, and that it was essential to the preservation of the property that it should be placed in the hands of a receiver; and, finally, that the defendants were insolvent. The first point, as to the equity arising out of the result of the former trials, is indisputable. As to the second point or series of facts, the defendants deny all but the charge of cutting valuable timber (denying waste, however, in general terms) and support their denial by the affidavit of defendant, J. T. Akin. The affidavit of defendant Akin also, in terms, denies the charge of insolvency, but does not deny the making of the mortgage to his son-in-law, and that it contained all of his personal property. On this matter he contents himself with the averment that the mortgage debt is just. In addition, it is a fair inference from the record that defendant Akin has no other real estate, outside of the real estate in controversy, except the one-twenty-eighth interest purchased from D. O. Andrews. The only fact upon which there is a square denial, and

Troughber v. Akin.

upon which the complainant makes no showing other than his own affidavit, is as to the method of cultivating the land.

However, taking all of these phases of the matter into consideration, and having regard to the rule laid down in *Cone* v. *Paute,* supra, that great weight must be given to the finding of the lower court in such a matter, we can not say that it would be proper to grant a *supersedeas* in this case or that the chancellor acted erroneously in appointing the receiver. From all that appears, his action seems to have been dictated by a sound discretion, and is in accord with "the ends of substantial justice" (Shannon's Code, sec. 5549), looking only to the preservation and care of the property pending the litigation, so that the successful party, whichever of the two it may be, shall receive the land undiminished in value.

Therefore the application for *supersedeas* is denied.