Nicholson, C. J.,
delivered the opinion of the Court.
*268 In 1861 a judgment was rendered in the Supreme Court at Jackson in favor of Levi McCollom against Josiah Wilburn and others, for $1,161 and costs. Execution issued and came to the hands of Moses Bates, Sheriff of Perry county. The execution was returnable to September Term, 1861, but no return was made. But on the 13th of March, 1862, the Clerk of the Supreme Court made these entries on the execution docket, viz: “Received $16.35, my fees and State tax. Received $1,184 in Confederate money. I informed John H. Lewis, solicitor for plaintiff, by letter, that I received the above amount of $1,184, and held it subject to his order as plaintiff’s solicitor. March 14,' 1862.” Signed by the Clerk.
At the April Term, 1866, of the Supreme Court, Levi McCollom moved the court to vacate and set aside the receipt on the execution docket, and to order the issuance of an alias execution. This motion was based upon a petition, which states that the petitioner had. never received the money as paid in, but had repudiated • it as a payment. No notice of the motion was given, either to the defendants in the execution or to the' Sheriff.
At the same term of the Court it was ordered that the satisfaction of the judgment, except as to the $16.35, be set' aside and for nothing held, and that another execution be issued. The reason given in th'e opinion of the Court and in. the decree fort this order was, that a payment in Confederate money was invalid because of the illegality of the currency.
Upon -the issuance of the execution* so ordered/ the *269 defendants therein filed their bill for an injunction in which the only allegation made is, that they had fully paid and satisfied the judgment by paying the amount thereof to the Sheriff, Bates.
After a demurrer to this bill was overruled, the administrator of plaintiff, in the execution, McCollom, answered upon information and belief, that the Sheriff collected the amount of the judgment in Confederate Treasury notes and paid the same into the. office of the Clerk of the Supreme Court, and that his intestate refused to recognize the same as payment. He then states the proceedings in the Supreme Court at its April Term, 1866, already referred to, and relies upon the action of the Court in that proceeding as conclusive of the question of payment.
Proof was taken upon the matters involved in the pleadings.
The Sheriff, Bates, proves that he collected the full amount of the execution from the defendants therein, in current bank notes; the collections made in January and February, 1862, and that he received no Confederate money. Although this witness was examined three times, he fails to state what disposition he made of the current bank notes collected.
Jos. G. Smith proves that about the 11th of March, 1862, being about to visit Memphis, Moses Bates requested him to take some money to Jackson to pay to the Clerk of the Supreme Court on certain judgments. He says he received $1,300 from Bates and paid off all of the McCollom judgment, amounting to about $1,200. The money was paid to *270 D. Welch, Clerk of the Supreme Court. He says he paid about $500 in current bank notes, and J. H. Lewis, McCollom’s attorney’s receipt for his fee, amount not recollected; and the balance in Confederate notes, and the Clerk received it without objection. That he paid to the Clerk the same money or currency he had received from Bates.
M. D. Welch, the Clerk, proves that on the 13th of March, 1862, he received $1,200.35 on the judgment of MeCollom v. Wilburn and others, but does not remember who paid it to him. The money he received was in Confederate notes. He says he wrote to J. H. Lewis, plaintiff’s attorney, informing him of the receipt of the money, but no application was ever made for it. He says he is sure that it was Confederate money paid to him, and that he had no instructions as to the kind of money to be received. The transcript of the proceedings in the Supreme Court was filed as evidence.
Upon the hearing of the cause, the Chancellor held that the action of the Supreme Court on the motion to set aside the satisfaction, was conclusive- of the question of non-payment, and dismissed the bill.
After the hearing, and at the same term, the complainants offered to file a petition for a rehearing, but the same was disallowed.
The first question arising upon the record is, whether the order or decree of the Supreme Court vacating and setting aside the entry of satisfaction on the execution docket, and directing another execution to issue,' was conclusive upon the defendants in the *271 execution? The jurisdiction of the Supreme Court to control its own records and to enforce its own orders, decrees, and process, is too well settled to require any reference to authorities. It is sufficient to refer to the ease of Newman v. Justices of Soott County, 1 Heis., 787, in which the question is fully discussed. No doubt can exist as to the jurisdiction of the Court, upon the application of the plaintiff in the judgment, to institute inquiry as to the validity of the satisfaction of the judgment appearing upon the execution docket. But to give finality and conclusiveness to the judgment rendered upon such inquiry, it was necessary that the defendants in the execution should have notice and have their day in court. As long as a case is pending in court, the parties are presumed to be there, and no other notice is required. But in a case like this, where final judgment has been rendered, execution issued, and upon the execution docket an entry made showing prima facie at least that the judgment has been satisfied, and that the defendants may be presumed to believe that the judgment is fully satisfied, the Court could not proceed without notice to the defendants to render another judgment which would be conclusive of their rights and interests.
The facts of this case are strongly illustrative of the holding of the Chancellor. It appears by the proof of the Sheriff, and the same thing is sworn to in the petition for re-hearing, that the execution was paid in full in current bank notes; and in the petition for re-hearing, it is further stated that the money was received by the Sheriff, and forwarded to the Clerk *272 at Jackson under the instructions of plaintiff’s attorney. If we assume that the money actually paid in to the Clerk was Confederate money, it is apparent that either the Sheriff and the defendants in the execution have sworn falsely, or that a gross fraud has been practised on the defendants in the execution, either by the Sheriff in not handing to Smith the money actually received by him, or by Smith in not paying to the Clerk the same money received by him from the Sheriff, or by the Clerk in entering the receipt on his docket of Confederate money, when in fact it was current bank notes.
Yet upon the ruling of the Chancellor none of these matters of fact could be inquired into, after the Supreme Court, upon the ex parte application of the plaintiff in the executions, determined that the payment was in Confederate money, and that such payment was invalid. If the defendants in the execution had been notified of the application to set aside the satisfaction, the Court would have had jurisdiction to have the facts investigated, and to determine whether another execution ought to be issued. No such notice having been given to the defendants in the execution, the action of the Court was not conclusive upon them.
The next question presented is, were the defendants in the execution bound to seek their remedy by certiorari and supersedeas in the Supreme Court, or could they elect to seek redress in a court of equity? We think it clear that the defendants in the execution had a right to seek redress in either forum, but we are not at all certain that the remedy by certiorari *273 and supersedeas would have been free from embarrassment, and as tbat ample as in the Chancery Court. The jurisdiction of the two courts upon the facts as stated was concurrent. The Chancery Court had jurisdiction because the order or judgment in the Supreme Court was procured upon an ex parte application, in which the material fact that the execution was paid off in current bank notes was suppressed; in legal contemplation this was a fraud upon them, and entitled them to resort to a court of equity for relief. We are satisfied that the remedy in equity was muck more complete and unembarrassed than in the Supreme Court.
The result is that the decree below must be reversed, and the execution perpetually enjoined. The costs of this Court will be paid by the defendant.