State, ex rel., v. Hebert.

STATE, *ex rel.* SAM A. CONNER, *Sheriff, v.* C. J. HERBERT.

*(Nashville.* December Term, 1912.)

1. **HABEAS CORPUS. Later petition raising no new isues not raised in former petition.**

The former petition for a writ of *habeas corpus*, decided adversely to the petitioner, is compared with a later second petition alleging the presentation of certain new issues not raised and adjudicated in the former petition, and it is found and *held* by the court that no new issues are presented or raised in the later petition. (*Post, pp.* 228-237.)

2. **SUPREME COURT. Power to enforce its final judgments and to protect them from interference.**

The supreme court of Tennessee has inherent power, as a constituent part, to enforce its final judgments and protect them from interference, and such power is recognized and guaranteed by statute (Shannon's Code, section 5911, subsecs. 3, 4, and 6 and section 5912, giving that power to all. courts, and section 6336, authorizing the supreme court to issue all writs and process necessary to enforce its jurisdiction). (*Post, pp.* 237-239.)

Code cited and construed: Secs. 5911 (subsecs. 3, 4, and 6), 5912, 6336 (S.); secs. 4874 (subsecs. 3, 4, and 6), 4875, 5253 (M. & V.), secs. 4099 (subsecs. 3, 4, and 6), 4100, 4503 (T. & S. and 1858).

Cases cited and approved: King v. Hampton, 3 Hay., 59; Newman v. Scott Co., 1 Heisk., 787; Wilburn v. McCollom, 7 Heisk., 267, 271; Motions v. Curry, 12 Heisk., 51; Caruthers v. Caruthers, 2 Lea, 71; State v. Memphis, 2 Shannon's Cases, 185; Wyler v. Blevins, 113 Tenn., 528.

3. **SAME. Same. Power while sitting in one division to prevent interference with its process in another division.**

The fact that the constitution and statutes require the supreme court to hold separate sessions at certain places in the three

State, ex rel., v. Hebert.

grand divisions of the State does not preclude the court, while sitting in one division, from preventing interference with its process issued in another division; for the supreme court is the one and indivisible court of the whole State, and has power as such throughout the State, and wherever it may be sitting, it will, under its broad powers, issue its writs into any county where it may be necessary to protect its process from interruption, or to remove obstructions thrown in the way of its execution. (*Post, pp.* 239, 240.)

4. SAME. Same. Same. May exercise its appellate jurisdiction by certiorari and by original proceedings in aid of the appellate jurisdiction.

Under the constitutional provision (art. 6, sec. 2) conferring upon the supreme court appellate jurisdiction only, with "such other jurisdiction as is now conferred by law on the present supreme court," the court's jurisdiction may be exercised by writ of *certiorari*, as well as by writ of error or appeal, or appeal in the nature of a writ of error, and by original proceedings in aid and enforcement of its appellate power at every stage, from their inception to their completion. (*Post, pp.* 240, 241)

Constitution cited and construed: Art. 6, sec. 2.

Cases cited and approved: Railroad v. Campbell, 109 Tenn., 640; Staples v. Brown, 113 Tenn., 639.

Cases cited, approved, and distinguished: Miller v. Conlee, 5 Sneed, 432; State v. Bank, 5 Sneed, 573; Ward v. Thomas, 2 Cold., 565; State v. Elmore, 6 Cold., 528; Aldrich v. Pickard, 12 Lea, 657, 658; State v. Gannaway, 16 Lea, 124, 128; Railroad v. Byrne, 119 Tenn., 278, 320.

5. SAME. Same. Same. Same. May by certiorari assume jurisdiction before final decision of lower court acting illegally.

Under our statute (Shannon's Code, section 4853), authorizing the writ of *certiorari* whenever an inferior tribunal, board, or officer exercising judicial functions "is acting illegally," final decision or judgment in such inferior court is not prerequisite

State, ex rel., v. Hebert.

to the issuance of the writ of *certiorari*, through which the supreme court may assume jurisdiction, and deprive such offending court of the case and restrain it from further action in respect thereof. (*Post, pp.* 241, 242.)

Code cited and construed: Sec. 4853 (S.); sec. 3838 (M. & V.); sec. 3123 (T. & S. and 1858).

Cases cited and approved: Beck v. Knabb, 1 Ov., 56; May v. Campbell, 1 Ov., 61, 63; Kendrick v. State, Cooke, 474; Railroad v. Campbell, 109 Tenn., 640.

6. SAME. Same. Same. Same. Same. May by certiorari quash and restrain second habeas corpus proceedings before final decision in lower court acting without jurisdiction.

Where the supreme court has, adversely to the petitioner or prisoner, finally determined a *habeas corpus* proceeding, and the judge of a criminal court has assumed jurisdiction of a second *habeas corpus* proceeding upon a petition alleging newly discovered facts as the grounds therefor, when said alleged new grounds are but variations of those already passed on by the supreme court, and in substance the same, the supreme court has jurisdiction by writs of *certiorari* and *supersedeas* to take said second *habeas corpus* proceedings from such inferior judge into the supreme court to the end that they may be quashed, and that further proceedings before said judge may be restrained; and it was so *held* where the object of the said second proceeding was to prevent extradition of the petitioner or prisoner authorized by the prior judgment of the supreme court. (*Post, pp.* 242-247.)

Code cited and construed: Sec. 5541 (S.); sec. 4511 (M. & V.); sec. 3761 (T. & S. and 1858).

Cases cited and approved: State v. Galloway, 5 Cold., 336, 337; State v. Taxing District, 16 Lea, 240, 249, 250; State, ex rel., v. McClellan, 87 Tenn., 52; Vanvabry v. Staton, 88 Tenn., 334; McLendon v. State, 92 Tenn., 520, 524.

7. SAME. Same. Same. Same. Same. Same. On granting certiorari to quash second habeas corpus proceedings, supreme court will direct issuance of capias for arrest of prisoner.

State, ex rel., v. Hebert.

Where the supreme court grants the writ of *certiorari* to quash and supersede the second *habeas corpus* proceedings in an inferior court, which interfere with a previous judgment of the supreme court, under which judgment extradition of the prisoner was authorized, the supreme court will direct the issuance of a *capias* for the arrest of the prisoner and his return to the custody from which he was wrongfully taken in such second *habeas corpus* proceedings. (*Post, p.* 247.)

Cases cited and approved: State, ex rel., v. Endsley, 122 Tenn., 647; Spencer v. State, 125 Tenn., 64, 79.

## FROM DAVIDSON.

Petition for *certiorari* and *supersedeas* filed in the Supreme Court to remove and quash second *habeas corpus* proceedings pending before A. B. NEIL as Judge of the Criminal Court of Davidson County.

M. N. WHITAKER, for relator.

LITTLETON, LITTLETON & LITTLETON, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

An original and amended petition has been filed in this court under the above-mentioned style by Sam A. Conner, sheriff of Hamilton county, containing in substance the following allegations:

That on the 17th day of December, 1912, the defendant, C. J. Hebert, filed a petition for the writ of *habeas corpus* before Hon. A. B. Neil, judge of the criminal

court of Davidson county; that in obedience to the
prayer of this petition the said judge of the criminal
court issued his fiat to the present petitioner, Sam A.
Conner, to have the said C. J. Hebert before him on
said *habeas corpus* proceeding on the 21st day of De-
cember, 1912, to be dealt with according to law; that
in obedience to said mandate the present petitioner
presented the said C. J. Hebert before the judge of said
criminal court, and filed his return, in which he stated
that he was holding the said Hebert under a decree
pronounced by the supreme court of Tennessee at Knox-
ville on the —— day of ———, 1912, and also by virtue
of a warrant issued by the governor of Tennessee, on
requisition of the governor of South Carolina; that,
when he presented Hebert before the court on the day
mentioned, the judge of the criminal court, by his re-
quest, passed the case until the 25th day of January,
1913; that the proceedings up to this stage were taken
without notice to M. N. Whitaker or T. Pope Shepard,
counsel for the State of South Carolina; that imme-
diately upon the return of the present petitioner to the
city of Chattanooga he notified counsel for the State of
South Carolina of the above-mentioned action; that
he was advised by said counsel that it was his duty to
hold Hebert under the supreme court decree pronounced
at Knoxville, irrespective of any action taken in the
criminal court of Davidson county, but upon receiving
further advice upon the subject he deemed it his duty
to abide by the action of the judge of the criminal
court, and released Hebert upon bond ordered by him;

that on January 27, 1913, counsel for the State of South Carolina, M. N. Whitaker, obtained permission of the court to file petitioner's original petition, bringing this matter before the court, asking for writs of *certiorari* and *supersedeas* to bring before this court the case pend-, ing before the judge of the criminal court of Davidson county as aforesaid; that he is informed by M. N. Whitaker, counsel for the aforesaid State of South Carolina,, that he, the said Whitaker had an agreement with Jesse M. Littleton one of the counsel for C. J. Hebert, the day before this petition was filed, that the *habeas corpus* proceedings pending before the judge of the criminal court of Davidson county should be continued until the next term of that court, which is in May, 1913; that this agreement was made to give the supreme court time to act upon the petition before any further action should be taken by the judge of the criminal court.

It is further alleged that petitioner is informed by the clerk of the criminal court of Davidson county that no paper had been filed or left with him in said *habeas corpus* case pending before that court, save and except petitioner's return to the writ of *habeas corpus,* but that petitioner is now informed that by agreement between M. N. Whitaker, counsel for the State of South Carolina, and Jesse M. Littleton, counsel for C. J. Hebert, made on the day of filing the amended petition,, which was February 21, 1913, the original petition acted upon by the judge of the criminal court was lost or mislaid, and that a copy of the same was filed on the

said 21st day of February with the said clerk of the criminal court, with the agreement that this copy should be filed as of December 17, 1912, and treated as an original petition filed before the judge of the criminal court, and that a full transcript of the record from the supreme court at Knoxville by counsel above mentioned was on the said 21st day of February filed with the clerk of the criminal court of Davidson county, with the agreement that this record should be looked to for all purposes.

It is further alleged that on the —— day of November, 1912, the supreme court of Tennessee passed upon the present case while sitting at Knoxville, and committed the said C. J. Hebert to petitioner, Sam A. Conner, with directions that petitioner should deliver the said Hebert to the authorities of South Carolina on the 29th day of December, 1912; that petitioner was prevented from obeying this order by virtue of the proceedings above mentioned, had before the judge of the criminal court of Davidson county; that in the proceedings before said judge there is no effort to modify, annul, correct, or reform the decree pronounced by this court at Knoxville just mentioned.

It is further alleged that, after the decree or judgment of this court pronounced at Knoxville, counsel for Hebert made diligent effort to induce Gov. B. W. Hooper to cancel and withdraw the warrant issued by him, and that this was refused; that after the pronouncement of the decree or judgment of this court at Knoxville, M. N. Whitaker, counsel for the State of South Carolina, acknowledged service of notice by counsel for C. J. He-

bert that they would appear before Mr. Justice Lurton, in the city of Washington, on the —— day of December, 1912, just before the expiration of the thirty days provided in this court's decree or judgment at Knoxville, for a delivery of the said Hebert by the petitioner, Conner, to the authorized agents of South Carolina under said decree, and make application for writ of error, with a view to having the case transferred to the supreme court of the United States; that counsel for the State of South Carolina advised the attorney-general of that State of the day and date of the application before Mr. Justice Lurton for writ of error, and that the said attorney-general proceeded to Washington to be present at the hearing of said application, but that as a matter of fact this application was abandoned by W. B. Miller, counsel for Hebert in that matter, who had gone to Washington to make the application, said abandonment being predicated on information from Jesse M. Littleton, another one of the counsel for Hebert, that he had a better and more effective remedy than the application for writ of error before Mr. Justice Lurton could afford, which relief was the proceeding instituted before the judge of the criminal court of Davidson county already mentioned.

The prayer of the petition is that writs of *certiorari* and *supersedeas* issue, to the end that the case pending before the judge of the criminal court of Davidson county be brought to this court, and that the judge of that court be restrained from further action therein; also that an *instanter capias* issue for C. J. Hebert, with

directions to petitioner, Conner, to take him in custody free from bond, and hold him to be delivered to the authorities of South Carolina, free from further interference, to the end that petitioner may obey the command of this court pronounced at Knoxville.

The petitioner exhibits a copy of the petition filed by C. J. Hebert before the judge of the criminal court of Davidson county.

This petition contains in substance the following allegations:

That Hebert is illegally restrained of his liberty by one W. H. Coleman, through Sam A. Conner, as his agent and representative, who has arrested Hebert and holds him in custody in the county jail of Hamilton county; that this arrest, "according to petitioner's best information," is by virtue of an "alleged warrant" issued by the governor of Tennessee; that this warrant is based upon "an alleged requisition" purporting to have been issued by the governor of South Carolina to the governor of Tennessee; that prior to the issuance of this warrant a previous warrant was issued, "or alleged to have been issued," by Gov. Hooper, "purporting to have been issued upon this same requisition and these same papers;" that upon this warrant petitioner was arrested by one A. J. Ware, as agent for the said W. H. Coleman, and upon the 4th day of October, 1911, petitioner Hebert presented to Hon S. D. McReynolds, judge of the criminal court of Hamilton county, Tenn., a petition for the writ of *habeas corpus*, to which said W. H. Coleman and his agent, A. J. Ware, were made

defendants; that upon this petition the writ of *habeas corpus* issued, and after several continuances Judge McReynolds discharged petitioner Hebert; that thereupon on or about the 23d day of October, 1911, petitioner was again arrested by the said W. H. Coleman, through his agent, Sam A. Conner, and thereafter was further restrained of his liberty by virtue of and under color of the warrant last issued by the governor, "purporting to have been issued upon the said same requisition, and said same alleged papers;" and that he is now illegally restrained of his liberty by and under color of this warrant; that said restraint is illegal and in violation of petitioner's rights as guaranteed "by article ——, section ——, of the Constitution of the United States, and laws passed pursuant thereto."

The petitioner then proceeds to state seven grounds of objection to the warrant, in substance as follows: (1) That the requisition was *functus officio* when Gov. Hooper issued his warrant thereon; (2) that the warrant of Gov. Hooper, if one was issued by him at all, was dated August 30, 1911, whereas it was issued, if at all, on October 14, 1911, but that no such warrant was in fact issued by Gov. Hooper; (3) that the South Carolina indictment was not properly "proven, verified, and authenticated," and said indictment charged no crime under the laws of South Carolina; (4) that the warrant purporting to have been issued by Gov. Hooper did not run in the name of the State of Tennessee; (5) that the warrant failed to state that there was any legal evidence before Gov. Hooper to show that Hebert was a

fugitive from South Carolina, and that in fact he was not a fugitive, and was not in South Carolina when the crime was committed; (6) that the prosecution in South Carolina was not instituted for the purpose of enforcing the criminal laws of that State, but to compel Hebert to pay a debt claimed against him; (7) because public opinion in South Carolina was so inflamed against Hebert that he could not obtain a fair trial in that State. He then adds the following:

"(8) Petitioner now shows to the court that shortly after the 23d day of October, 1911, he filed a second petition for the writ of *habeas corpus* before the said S. D. McReynolds, judge of the criminal court of Hamilton county, Tenn., substantially making the above allegations. A copy of said second petition is hereto attached, marked 'Exhibit I.' Upon said second petition a writ of *habeas corpus* was issued, and petitioner permitted to give bond for his appearance at the hearing in the sum of $1,000. The hearing on said second petition was continued from time to time, and finally the issues therein made, as above set out, were resolved against your petitioner. Whereupon he appealed to the court of civil appeals of the State of Tennessee, which said court sustained the action of said Hon. S. D. McReynolds, from which said court, by *certiorari* and *supersedeas,* he carried the case to the supreme court of the State of Tennessee, which said court affirmed the decree of said court of civil appeals, and remanded petitioner to the custody of said Sam A. Conner, as said agent of W. H. Coleman, under and by virtue of the

State, ex rel., v. Hebert.

warrant hereto attached.    Said Sam A. Conner, as
agent for said W. H. Coleman, under and by virtue of
the warrant hereto attached, is now illegally restraining
petitioner of his liberty.

"(9)  Petitioner shows to the court that in said for-
mer proceedings the original requisition of the gov-
ernor of South Carolina upon the governor of Tennes-
see, and the original warrant alleged to have been is-
sued by the governor of Tennessee upon said alleged
requisition, and the alleged accompanying papers, were
by the State of Tennessee, or by counsel for said W. H.
Coleman, or his agent, Sam A. Conner, in some way lost
or misplaced, whereby petitioner was deprived of an
opportunity of inspecting the same, or making the other
defenses in said proceedings here and now set out.  Pe-
titioner shows your honor that since said former *habeas
corpus* proceedings, and only within the last few days,
petitioner has been reliably informed of certain addi-
tional facts which were not at issue in said former pro-
ceedings or adjudicated therein.    These facts have only
come to the knowledge of your petitioner since said for-
mer proceedings and within the last few days.    Peti-
tioner is advised, believes, and accordingly charges that
the principle of *res adjudicata* has no application to *ha-
beas corpus* proceedings, and renewing said charges
herein above set out, in addition thereto, upon informa-
tion and belief, petitioner charges:

"(10)  That the attached warrant, under which he
is now being restrained of his liberty, purporting to
have been issued by Ben W. Hooper, chief executive,

and governor of the State of Tennessee, was not, in fact, issued by said chief executive and governor of the State of Tennessee, or any one having authority to issue the same, and is invalid and void.

"(11) Said alleged warrant, as petitioner is informed, and believes, was not, in fact, authenticated by the governor or chief executive of the State of Tennessee, Ben W. Hooper, or any one having authority to authenticate it, and is invalid and void.

"(12) He further charges, upon information and belief, that no indictment, or copy of any indictment, or any paper purporting to be any copy of any indictment, accompanied the requisition by the governor of South Carolina to the governor of the State of Tennessee in this case; but the paper now on file, purporting to be a copy of an indictment, and purporting to have accompanied said requisition, did not in fact accompany the requisition, and was not in fact authenticated by the signature of the governor of South Carolina to said requisition, but, on the contrary, after said alleged requisition had been received by the governor of Tennessee and said first warrant had been issued thereon and quashed, was later sent over. That although the warrant alleged to have been issued in this case is predicated upon a requisition accompanied with an indictment, no indictment actually accompanied said requisition, nor did any paper purporting to be an indictment accompany the requisition, nor did any sufficient affidavit or warrant accompany the same as is required by law. Nor did said requisition authenticate any such

State, ex rel., v. Hebert.

indictment or warrant, nor is said alleged indictment authenticated as required by law.

"(13) Said paper purporting to have accompanied said requisition and purporting to be an indictment is not in fact an indictment, as petitioner is advised and believes, which said fact is apparent from an inspection of said paper alleged to have accompanied said requisition.

"(14) The alleged law of the State of South Carolina upon which said alleged indictment is predicated is void, because it conflicts with the constitution of the State of South Carolina.

"(15) The alleged indictment, alleged to have accompanied said requisition, as petitioner is informed, believes, and charges, was not authenticated by the governor of the State of South Carolina as required by law; nor was it otherwise properly authenticated.

"(16) Said extradition proceedings were not instituted in good faith, but upon a mere pretense, and to subserve the malice of private individuals in the State of South Carolina. The good faith of Gov. Cole Blease, of South Carolina, is not attacked herein, but malice is directly attributed to the private individuals who procured the issuance of the same."

It is alleged in the succeeding paragraphs that the questions mentioned in paragraphs 10 to 16, inclusive, were not at issue or raised in the former *habeas corpus* proceedings, and are for the first time raised in this cause; that an inspection of the former petition and of the transcript of the former record will show that some

of the allegations made in this petition, particularly the allegation that said warrant was not in fact issued by the governor of Tennessee, were in said former petition, and that in said petition the point contained in the latter allegation was apparently conceded, but that the real facts were unknown to the petitioner at the time; that said questions were not made or at issue in the former proceedings, and are made herein for the first time; that petitioner could not, in the exercise of the utmost diligence, have ascertained the facts referred to at said time; "that the illegality of your petitioner's said restraint has not already been adjudged upon a former proceeding of the same character to the best of petitioner's knowledge, information, and belief;" that, except "for the previous applications hereinabove set out, this is the first application for writ of *habeas corpus* made or granted in this cause, and is the first application for writ of *habeas corpus* presenting and raising the questions and acts herein alleged to have come to the knowledge of petitioner since said former petitions were filed and writs granted."

Notwithstanding the formal allegations in the petition just referred to, to the effect that the matters now presented have not previously been presented to the court, or passed on by it, it is perfectly apparent that nothing new of any significance whatever is contained in this new petition. It is conceded in paragraph 8 that the specifications which we have numbered 1 to 7, inclusive, appeared in substance in the former petition

for *habeas corpus* upon the matter of which we rendered judgment at Knoxville.

No. 1 made the point that the Governor's warrant was invalid, because the requisition was at the time *functus officio;* No. 10, that, it was invalid because not issued by the governor at all, or by any one having authority to bind him, which was the same in effect as No. 2; No. 11, that it was invalid because it was not authenticated by the governor, or any one having authority to bind him, which was also in substance the same as No. 2. We pass Nos. 9 and 12 for the moment. No. 13 makes the point that the indictment was not good, as shown by inspection of its face. This was necessarily involved in the former case, as the petition in that case exhibited a copy of the indictment. No. 14 necessarily fell within that part of No. 3 which made the point that the indictment charged no crime under the laws of South Carolina; No. 14 giving only a special reason for the charge. No. 15 is included within No. 3, that part of No. 3 which alleges that the indictment was not properly "proven and verified and authenticated." No. 16 is substantially the same as No. 6 of the former petition.

The only matter alleged in the present petition, which cannot on first glance be found in substance in the former one, is found in Nos. 9 and 12, to the effect that, since the final decision of the case on the former petition, the petitioner has discovered that "no indictment or copy of an indictment, or any paper purporting to be a copy of an indictment accompanied the requisition by the governor of South Carolina to the governor of

the State of Tennessee in this case; but the paper now on file, purporting to be a copy of an indictment, and purporting to have accompanied said requisition, did not in fact accompany the requisition, and was not in fact authenticated by the signature of the governor of South Carolina to said requisition, but, on the contrary, after said alleged requisition had been received by the governor of Tennessee, and said first warrant had been issued thereon and quashed, was later sent over; that although the warrant alleged to have been issued in the case is predicated upon a requisition accompanied with an indictment, no indictment actually accompanied said requisition, nor did any paper purporting to be an indictment accompany the requisition." It is alleged that he could not have discovered these facts by the utmost diligence; that because the original requisition and papers accompanying it were lost before he had an opportunity of inspecting them on the former trial he was put at a disadvantage in respect thereof. It is perceived that everything is stated upon information and belief, except the loss of the papers referred to, and petitioner does not disclose to the court the source of his information on the point referred to, or upon any of the points—in short, does not make a frank disclosure, so that we can be assured of his good faith. To this we must add, what appears to be conclusive, the following agreement entered into by him in the former case:

"It is agreed that the copy of the requisition of the governor of South Carolina to the governor of Tennes-

State, ex rel., v. Hebert.

see, filed as exhibit to the petition of relator in this case, is a true copy of said requisition, and that it is the only requisition ever presented to Gov. Hooper in this case.

"It is further agreed that the copy of the indictment filed as exhibit to said petition is a true copy of the indictment which accompanied the requisition of the governor of South Carolina above referred to."

In short, as previously stated, there is nothing new in the present petition, only a variation of the former allegations. They are the same in substance.

We shall now consider the powers of this court with respect to interferences with its final judgments and decrees.

The power to enforce its final judgments is inherent in all courts, since without this power the courts themselves would be unable to effect the ends for which they were designed. This power not only inheres in all courts as a constituent part, but in this State is recognized and guaranteed by statute. Shan. Code, sec. 5911, sub-secs. 3, 4, and 6. This section reads: "Every court has power . . . (3) to compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding therein; (4) to control in furtherance of justice, the conduct of its officers, and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto; . . . (6) to control its process and orders." One instrument pointed out is (section 5912): "For the effectual exercise of its powers, every court is vested

with power to punish for contempt, as provided for in this Code." In addition it is provided in respect of the supreme court (section 6336): "The court may issue all writs and process necessary for the exercise and enforcement of its jurisdiction." It has been held that the court has power to compel the levy of a tax by a county or city to pay its final judgment (*Newman* v. *Justices of Scott County*, 1 Heisk., 787; *State* v. *Memphis*, 2 Shan. Cas., 185); that for the same purpose it may call before it a garnishee and examine him (*Wyler, Ackerland & Co.* v. *Blevins*, 113 Tenn., 528, 82 S. W., 829); that upon an application for an alias execution on one of its final judgments, fully receipted on the execution docket, it may, after first giving notice, institute an inquiry as to the fact of payment (*Wilburn* v. *McCollom*, 7 Heisk., 267, 271); that it may entertain a motion against an ex-sheriff for failure to return an execution on its final judgment, as a means of enforcing the judgment (*Motions* v. *A. P. Curry, Ex-Sheriff*, 12 Heisk., 51); also that it may issue a writ of restitution to restore land in litigation to a party from whom it was taken by order of the trial court pending an appeal to this court (*Caruthers and Buchanan* v. *Caruthers*, 2 Lea, 71); and generally that the court has the power to aid, and will aid, its appellate power by any writ which will effect the purpose (*King* v. *Hampton*, 3 Hayw., 59). The power to enforce its judgments includes the power to protect them against interference; and the Code section quoted authorizes it to use any process that will secure that protection and enforce-

ment, whether it be proceedings in contempt, injunction, the writ of prohibition, *mandamus, certiorari,* and *supersedeas,* or any other writ needed for the exercise of its power, either among those known, or any that the court may devise which may be needed to protect its judgments from interference, and to secure their enforcement. Such is the meaning of section 6336. It was intended that, in the performance of the duties appertaining to it as the head of the judicial system of the State, the court should be supreme in fact as well as in name.

The arrangement into three grand divisions, by the constitution and statutes, makes it necessary that the court shall hold separate sessions at Knoxville, Nashville, and Jackson; that the cases brought within these respective divisions, and docketed therein, shall be tried and determined in those places fixed by law for holding the terms of the court; that judgments shall be entered on the minutes of the terms there held; and that process, such as executions, for example, shall run in accordance therewith and be issued and signed by the clerks of this court in charge at such places. But this does not mean that the court, when sitting in one grand division, is without power to protect from interference its process issued in another division. The court is one and indivisible. It is the court of the whole State, and has power as such throughout the State, and in every county and civil district thereof. Wherever it may be sitting, it will, under the broad powers given it by law, issue its writs into any county in the State where it may

be necessary to protect its process, mesne or final, from interruption, or to remove obstructions thrown in the way of its execution. If the court had not this power, or, having it, failed to exercise it, it might easily happen that during the interval between the adjournment of the term at Knoxville annually, the last week in November, and its reconvention in September of the following year, irreparable damage might be done to the rights adjudged during the preceding terms, through obstructions offered to the enforcement of its judgments. The same would be true, of course, as to Nashville and Jackson during the vacations of this court at these places. The divisional arrangement does not limit or restrict the pervading powers of the court further than is absolutely necessary to preserve the integrity of the separate terms at the three places named. This integrity is not impaired by any act which the court when sitting elsewhere may do in furtherance of its decrees at either of the other places. The judgments and decrees of the court entered at either of the places named will act *ex propriore vigore,* if unimpeded by outside interference. It is the prevention of such interference that the court, when sitting at other places, will afford.

These powers of the court are exercised only in aid of its appellate powers. The powers of the court are declared in the constitution to be appellate only, with the exception and addition that "it may possess such other jurisdiction as is now conferred by law on the present supreme court." Const., art. 6, sec. 2. The same provision is found in the constitution of 1834. This

has been construed to mean power "to adopt such pro-
ceedings, issue such process, and try such facts as might
become necessary to carry out and perfect its own judg-
ments, and decrees, in cases before it by appeal or writ of
error." *State* v. *Elmore*, 6 Cold., 528; *Miller* v. *Conlee*,
5 Sneed, 432; *State* v. *Bank*, 5 Sneed, 573; *Ward* v.
*Thomas*, 2 Cold., 565; *Aldrich* v. *Pickard*, 12 Lea, 657,
658; *State* v. *Gannaway*, 16 Lea, 124, 128; *Railroad* v.
*Byrne*, 119 Tenn., 278, 320, 104 S. W., 460. This con-
struction is too narrow, or at least is capable of being
understood in too narrow a sense, by reason of the last
clause—"in cases before it by appeal or writ of error."
The power exists in every case that reaches the court
through the exercise of its appellate power, as, for ex-
ample, by the writ of *certiorari* (*Staples* v. *Brown*, 113
Tenn., 639, 85 S. W., 254; *Tennessee Central R. R. Co.*
v. *Campbell*, 109 Tenn., 640, 75 S. W., 1012), as well as
by writ of error or appeal, or appeal in the nature of
a writ of error; also to proceedings originating in the
court in aid and enforcement of its appellate power
at every stage, from their inception in any given con-
troversy to their completion in the full execution of its
final judgments and decrees.

As just indicated, the appellate power of the court
may be exercised, in a proper case, through the writ of
*certiorari*. Usually, in modern times, this writ has
been used only after final judgment in an inferior court.
But this is not the only use. Originally it was more
commonly used to bring the cause into the superior

court before such final disposition in the lower court. This is distinctly held in three of our early authorities. *Beck* v. *Knabb,* 1 Tenn. (1 Overt.), 56; *May* v. *Campbell,* 1 Tenn. (1 Overt.), 61, 63; *Kendrick* v. *State,* Cooke, 474. It is clearly recognized and provided for by our Code in section 3123 (Shan. 4853): "The writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, *or is acting illegally,* when in the judgment of the court there is no other plain, speedy, or adequate remedy." The language which we have italicized indicates that the offending court or officer may be deprived of the case and restrained from further action in respect thereof, before final decision; that is, when he *"is acting illegally."*

The case of *Tennessee Central R. R. Co.* v. *Campbell,* supra, is not, as insisted by counsel, in conflict with what we have just said. That case was correctly decided on its facts. The court, however, in that case did not have before it any facts similar to those now before us, and nothing said in that case in any wise contravenes what is said here. As we have said already, the court will not usually by *certiorari* interfere with a lower court's dealing with a case, until final judgment, but it has the power in a proper case, and where necessary to effect the ends of justice will use that power.

We shall now apply these principles to the case before us.

The action of the judge of the criminal court of Davidson county, in taking Hebert from the custody of

the sherif of Hamilton county and admitting him to bail, thereby preventing his surrender to the agent of the State of South Carolina pursuant to the judgment of this court in the former case, and in assuming to pass upon the question as to whether he was lawfully held under that judgment, was an interference with the final judgment of the court, and further progress in such action must be restrained, unless it be made to appear that such judgment has been abrogated, or has spent its force, or that a new right has arisen as set forth *infra*. It has been inferentially held, and, we think, correctly, that where a prisoner was originally placed in confinement, in the State penitentiary, under the judgment of a court, and was still held there after his term had expired in due course, or by good time earned, under the statute appertaining to that subject, he might be released on *habeas corpus*. *State, ex rel., v. McClellan*, 87 Tenn., 52, 9 S. W., 233; *Vanvabry v. Staton*, 88 Tenn., 334, 12 S. W., 786. Also when the judgment under which the petitioner was held in confinement was void. *McLendon v. State*, 92 Tenn., 520, 524, 22 S. W., 200, 21 L. R. A., 738; *State v. Taxing District of Shelby County*, 16 Lea, 240; *State v. M. C. Galloway*, 5 Cold., 336, 337 (loc. cit.), 98 Am. Dec., 404. We know of no case in this State which justifies under any other circumstances the suing out a *habeas corpus* after final judgment and commitment thereunder, nor any principle justifying such a course, save as below indicated. Indeed, it is said in *State v. Taxing District of Shelby Co.*, supra: "When the restraint

from which relief is sought by a writ of *habeas corpus* proceeds from a judgment erroneous, but not void, the writ will not lie. Nor, under it, can a party impeach a judgment as contrary to the facts. And, in general, this is not the remedy where the imprisonment is on judicial process. But when the sentence is void, not merely voidable or the term of imprisonment has expired, relief may be had by the writ. 1 Bish. Crim. Proc., sec. 1410. Inferior judicial officers, says Mr. Cooley, sometimes use the writ as if it were a writ of error, under which they might correct the errors and irregularities of other tribunals. 'And such employment of it is an abuse.' Const. Lim. (4th Ed.), 430. These are elementary principles, and the Code consequently directs that the party detained shall be remanded to custody 'in every case in which the detention is authorized by law,' and the time for detention has not expired, Code, sec. 3761." 16 Lea, 249, 250. This is in accordance with the great weight of authority elsewhere. 21 Cyc., pp. 294, 296, 297, and page 326, sec. 4.

Now in the case before the court it is perceived the petition in the *habeas corpus* proceeding before the judge of the criminal court of Davidson county does not charge any want of jurisdiction on the part of this court, or that the period of confinement has ended, or any other really new matter. At most, the petitioner therein seeks a new trial of the case by the use of the writ of *habeas corpus* on the ground of alleged newly discovered facts. We have seen that the alleged new grounds charged are but variations of those already passed on

State, ex rel., v. Hebert.

by this court at Knoxville, and in substance the same; the new circumstances being introduced for the purpose of strengthening petitioner's case on the old points.

We are not to be understood as holding that the principles governing the defense of *res adjudicata* apply in all their strictness to *habeas corpus* cases. It may well happen that, after a decision of this court in such a case, new facts vitally material in their nature will develop, which were not known to the petitioner when he made his application, and could not have been discovered by the exercise of reasonable diligence; or facts may come into existence, after the final judgment on appeal, which would have deterred this court from dismissing the petition if they had been known and had been presented to the court. In such a case the proper practice is to present a sworn petition to this court, stating the new matter and asking leave to institute the supplementary proceeding before a lower court or one of the judges thereof. If this court be not in session, or the case be so urgent that there is not clearly sufficient time, or ample time, to make such application, then the supplementary proceedings may be instituted before the nearest judge, as provided by statute, setting forth fully the former proceeding, and, if practicable, accompanying the petition with a full record of the former proceedings; but if, because of the urgency of the case, not practicable at the time of suing out such subsequent petition, such record should be furnished by the petitioner before the hearing of such case. But such proceedings, so begun after final judgment of this

court, without leave of this court, in the kind of case referred to, will be subject to arrest by *certiorari* and *supersedeas,* or other appropriate proceedings in this court, as in the present case, to the end that the final judgments of this court may be protected and enforced. However, if, when the new petition is brought into this court on such writ, or otherwise, we can see, on examining its allegations and comparing them with the allegations of the former petition, and the evidence introduced thereunder, that new facts are stated, or a new fact, in such subsequent petition, which would have changed the result of the case if it had been known to this court and had been proven, we will, under the discretionary power which the law gives us, either refuse to grant the writ of *certiorari,* or, having granted it, will on motion of the petitioner for *habeas corpus* discharge it, and permit the supplementary petition to proceed before the lower court; otherwise, this court will, as in the present case, supersede and quash such supplementary proceeding. Any other practice would result in an endless chain of *habeas corpus* proceedings instituted by an unsuccessful petitioner, and the administration of the law in this class of cases would be wholly paralyzed. Under the practice we have just laid down, while the judgments of the court will be guarded against frivolous assaults, and will proceed to their orderly enforcement in due course of law, still no man who has just ground for relief against unlawful restraint of his liberty will remain in bonds unsuccored. The law, while enforcing its judgments with a strong

hand, will see to it that no man suffers unjustly therefrom.

It thus appears, from the fact of the petition filed before the judge of the criminal court of Davidson county, as that petition is exhibited with the petition of the sheriff of Hamilton county herein, and a copy of the record of the former case, exhibited with both petitions, that the said judge acted illegally in granting the writ, and is acting illegally in keeping up and continuing in force such proceedings. We have, therefore, awarded a writ of *certiorari* to bring that cause into this court, to the end that it may be quashed, and that a *supersedeas* issue to restrain any further or other action on his part.

Furthermore, we direct that a *capias* issue to the sheriff of Hamilton county for the arrest of said C. J. Hebert, and his return to the custody from which he was wrongfully taken, to be dealt with in accordance with the judgment of this court in this case at our last term at Knoxville. *State, ex rel.,* v. *Endsly,* 122 Tenn., 647, 126 S. W., 103, 135 Am. St. Rep., 886; *Spencer* v. *State,* 125 Tenn., 64, 79, 140 S. W., 597, 38 L. R. A. (N. S.), 680.

C. J. Hebert will pay the costs of this proceeding.