HOWELL *et al. v.* THOMPSON.

(*Knoxville.* September Term, 1914.)

1. SUPERSEDEAS. Remedy. Nature of writ.

The writ of *supersedeas*, which Shannon's Code, secs. 5737, 5738, 6348, authorizes the supreme court to issue to interlocutory orders or decrees, is not a suitable remedy to vacate a temporary injunction, for a writ of *supersedeas* merely restrains the execution of something in *fieri*, but not yet finished, while an injunction is in itself negative in character. (*Post, pp.* 313-323.)

Acts cited and construed: Laws 1913, ch. 2; Laws 1851, ch. 181.

Code cited and construed: Secs. 5737, 5738, 6348 (S.).

Cases cited and distinguished: Edmondson v. King, 1 Tenn., 426; Linebaugh v. Rinker, 1 Peck., 362; Kearney v. Jackson, 9 Tenn., 294; Claiborne v. Crockett, 19 Tenn., 607; Keesee v. Board of Education, 46 Tenn., 127; Williams v. Boughner, 46 Tenn., 486; Railroad Co. v. Huggins, 47 Tenn., 217; Mabry v. Ross, 48 Tenn., 770; Cone v. Paute, 59 Tenn., 506; Allen v. Nelson, 66 Tenn., 343; Raht v. Mining Co., 2 Shan. Cas., 8; Payne v. Johnson, 2 Shan. Cas., 542; Foley v. Leath, 3 Shan. Cas., 354; Watkins v. Bank, 3 Shan. Cas., 564; Park v. Meek, 69 Tenn., 78; Baird v. Turnpike Co., 69 Tenn., 394; Johnston v. Hanner, 70 Tenn., 8; Roberson v. Roberson, 71 Tenn., 50; Blake v. Dodge, 76 Tenn., 465; Woods v. Batey, 83 Tenn., 733; Downing v. Coal Co., 93 Tenn., 221; Troughber v. Akin, 109 Tenn., 451; Coltart v. Hain, 2 Tenn. Ch., 356; Mabry v. State, 17 Tenn., 207; Redmond v. Redmond, 68 Tenn., 561; State, ex rel., v. Herbert, 127 Tenn., 220.

2. INJUNCTION. Validity.

An injunction made in respect to a subject-matter beyond the jurisdiction of a court is a mere nullity, and may be disregarded. (*Post, pp.* 323, 324.)

Case cited and approved:    State v. Ragghianti, 129 Tenn., 560.

Code cited and construed:    Secs. 5737, 5738 and 6348 (S.).

3. **SUPERSEDEAS.  Scope of Remedy.**

Where a court undertakes to enforce by contempt process injunctions void because made in respect to a subject-matter beyond its jurisdiction, such process may be superseded, under Shannon's Code, secs. 5737, 5738, 6348, authorizing the supreme court to issue *supersedeas* to interlocutory orders. (*Post, pp.* 323, 324.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—T. M. McConnell, Judge.

Littleton, Littleton & Littleton, for plaintiffs.

J. H. Early, W. B. Swaney, and W. G. M. Thomas, for defendant.

Mr. Justice Green delivered the opinion of the Court.

These bills were filed by a number of property owners, whose houses were occupied by so-called soft drink dealers, and by the proprietors of several soft drink establishments, to enjoin Frank M. Thompson, the attorney-general of Tennessee, from proceeding against them under chapter 2 of the Acts of 1913, Second Extra Session, known as the "Nuisance Act."

A temporary restraining order was issued by the chancellor, and after notice and hearing an interlocu-

tory injunction was issued, by which the defendant was enjoined from proceeding against complainants, or any of them under the Nuisance Act, until further orders of the court, except in that court and these causes, and restraining defendant from proceeding with certain litigation already instituted by him in the circuit court of Hamilton county to enforce the provisions of the Nuisance Act against certain of these defendants.

It was averred in the bills that the said act had no application to the business operated by the complainants—they claiming that the Nuisance Act was intended to apply alone to the sale of intoxicating liquors, which they said they did not dispense—and it was further averred that, if said act did apply to them, it was unconstitutional.

A petition for *supersedeas* of this interlocutory injunction is filed by the defendant in this court.

There has been considerable discussion at the bar and in briefs as to the nature of the writ of *supersedeas,* as to whether it is merely an ancillary writ, or whether it may be issued as a primary writ, originally remedial, aside from the act of 1851.

We have a number of early cases sustaining the contention of defendant that the common-law writ of *supersedeas* may be employed as original primary process, and is not necessarily ancillary to a *certiorari,* appeal, or writ of error. These cases are *Edmondson* v. *King,* 1 Overt., 426; *Linebaugh* v. *Rinker,* 1 Peck, 362; *Kearney* v. *Jackson,* 1 Yerg., 294; *Claiborne* v.

*Crockett*, 1 Meigs, 607. Perhaps there are other cases to the same effect.

In all these cases, however, the writ was directed to a final decree of the lower court. In other jurisdictions at this date the writ may only be employed with reference to final decrees. 37 Cyc., 598. In Tennessee, however, by the provisions of our Code, the writ of *supersedeas* may be employed to suspend the execution of interlocutory decrees in certain cases. By the Act of 1851, chapter 181, carried into Shannon's Code at sections 5737, 5738, 6348, it is provided:

Sec. 5737. "The supreme court in term, or either of the judges in vacation, may grant writs of *supersedeas* to an interlocutory order or decree, or execution issued thereon, as in case of final decrees, and may require the party applying to give bond, with good security, payable to the opposite party, conditioned to pay the amount of the interlocutory order or decree if so required, upon final hearing, and, further, to pay all such costs and damages as the opposite party may sustain."

Sec. 5738. "The clerk of the supreme court, upon issuing *supersedeas* in such case, shall transmit to the chancery court a copy of the petition and *supersedeas,* to be filed in the cause, and to constitute a part of the record."

Sec. 6348. "They may also grant *supersedeas* to the execution of an interlocutory decree of an inferior court, in the cases provided for in sections 5737 and 5738."

In the case of *Keesee* v. *Civil District Board of Education et al.,* 6 Cold., 127, and *Williams* v. *Boughner,* 6 Cold., 486, this court granted the writ of *supersedeas* as to interlocutory injunctions therein issued. It was supposed such authority was conferred upon the court by the statutes just quoted. No question appears to have been made in either of these cases as to the power of the court to act in this manner with respect to the particular orders superseded. Such a power on the part of the court appears to have been conceded. The power was assumed, and was not questioned. Therefore the character of interlocutory orders which might be properly stayed under the statutory provisions was not considered by the court.

The same court, however, in *McMinnville & Manchester R. R. Co. et al.* v. *Huggins et al.,* 7 Cold., 217, undertook a full discussion of the statutes and their scope. The rules laid down by Judge ANDREWS in this case have been approved and followed by the court ever since. Among other things, it was said:

"Our statutes recognize the writ of *supersedeas* as an established remedy, but give no general definition of the writ, nor description of its office. But the only cases in which a *supersedeas* is provided for, or mentioned in the Code, except in sections 3933 and 4513, are cases in which it is given as ancillary to the writ of error and the writ of *certiorari,* and in which its office is merely to stay proceedings under the judgment or decree while the cause is pending in the appellate court; and the proper office and function of

the writ of *supersedeas* is, undoubtedly, merely to stay proceedings. Bouvier's Law Dict.''

''But the *supersedeas* provided for in sections 3933 and 4513 does not operate as an appeal or writ of error, to bring the cause into this court. The cause remains in the inferior court; and the *supersedeas,* when granted, merely suspends the operation of the decree until a final hearing, but does not reverse it. The distinction between reversing a decree and merely superseding it, must be kept in mind. If the decree is one which is of a nature to be actively enforced against the party, then it may be superseded; proceedings under it may be stayed. But such a decree is suspended, not reversed, by the *supersedeas;* and if the decree or order be purely negative or prohibitory in its character, it may be, in a proper proceeding, reversed; but it is not a proper subject for the operation of a *supersedeas;* for there can be no proceeding under it to be stayed.''

''An injunction, in our practice, is a prohibitory writ, and its office is to restrain, and not to compel performance. It does not authorize any act to be done; and there can be no proceeding under it capable of being stayed by a *supersedeas.''* *McMinnville & Manchester R. R. Co. et al.* v. *Huggins et al.,* supra.

In *Mabry* v. *Ross,* 1 Heisk., 770, the same statutes were considered upon an application to supersede the dissolution of an injunction. The application was disallowed and the court said:

Howell v. Thompson.

"The writ of *supersedeas* is technically a writ to suspend the execution of a judgment. There must be something in the course of execution, to suspend which the writ is awarded—something in *fieri*, but not yet finished. Its common-law function is to stop the execution of a judgment at law, or a decree in equity whether interlocutory or final, and whether for money or other property, or whether the said execution be for the performance of any other act under the mandate of the court. There must be some affirmative act to be done, to prevent the doing of which the writ is awarded. Its issuance imports that something is about to be done which will be illegal and injurious to the party complaining, and the doing of that act is to be suspended until its justice and legality can be inquired of by the court. . . .

"But, delicate and dangerous as is this jurisdiction in a court of equity, and injurious as its exercise may sometimes be, can this court, under the authority conferred by the statute, award the writ of *supersedeas*, to thwart and defeat an interlocutory order granting a temporary injunction? Why not? Because the injunction is not an active, but a passive thing. It is of itself a *supersedeas*. There is nothing in *fieri* to check or stop. The writ has its peculiar and appropriate office, and in such case it would be powerless, and injurious and hurtful as the effect of such injunction may be, the parties must be left to litigate their rights to a final hearing, and to look to their remedies by appeal or writ of error."

The same view with reference to the office of this statutory *supersedeas* respecting interlocutory decrees has been expressed by the court in all of the following cases: *Cone* v. *Paute,* 12 Heisk., 506; *Allen* v. *Nelson,* 7 Baxt., 343; *Raht* v. *Mining Co.,* 2 Shan. Cas., 8; *Payne* v. *Johnson,* 2 Shan. Cas., 354; *Foley* v. *Leath,* 3 Shan. Cas., 354; *Watkins* v. *Bank,* 3 Shan. Cas., 564; *Park* v. *Meek,* 1 Lea, 78; *Baird* v. *Turnpike Co.,* 1 Lea, 394; *Johnston* v. *Hanner,* 2 Lea, 8; *Roberson* v. *Roberson,* 3 Lea, 50; *Blake* v. *Dodge,* 8 Lea, 465; *Woods* v. *Batey,* 15 Lea, 733; *Downing* v. *Coal Co.,* 93 Tenn., 221, 24 S. W., 122; *Troughber* v. *Akin,* 109 Tenn., 451, 73 S. W., 118.

In the last expression of this court upon the subject, *Troughber* v. *Akin,* 109 Tenn., 451, 472, 73 S. W., 118, 123, it was said:

"That interlocutory orders, however, may be so erroneously passed and drawn as really to contain elements proper only in a final decree or judgment, and when so drawn, and when, in addition, they are of a kind capable of active enforcement, they may be reviewed upon application for *supersedeas,* and . . . may be deprived of their obnoxious features, being allowed in other respects to remain in force; that before interlocutory orders can be restrained, upon such application, they must have both of the features above referred to, that is, must trench upon final relief, and must be of a nature to be actively enforced; neither feature alone being sufficient to justify interference, because, even if the order trenches upon final relief,

it may await correction upon appeal, if not of a nature to be actively enforced, and, on the other hand, it may be of a nature to be actively enforced, yet not amenable to *supersedeas,* because it does not have the color of final relief.''

In all the cases cited above, where there was an application to supersede an interlocutory injunction or the dissolution of an interlocutory injunction, the writ was disallowed, except in *Keesee* v. *Board of Education,* 6 Cold., 127, and in *Williams* v. *Boughner,* 6 Cold., 486. As we have seen, these cases did not consider the jurisdiction of this court in these matters, but the jurisdiction was assumed.

We are forced to hold, under our practice, settled by this long line of authorities, that the interlocutory injunctions granted by the chancellor against the defendant in these cases cannot be superseded by our statutory writ of *supersedeas.* These injunctions are unmistakably interlocutory, and only undertake to restrain the defendant from proceeding elsewhere than in these causes, pending the further orders of the court; they suspend his right to proceed generally under the Nuisance Act; they do not finally determine this right; and it cannot be contended that they are orders in *fieri* or capable of active enforcement. They have been executed.

The defendant undertakes to distinguish his petition for *supersedeas* from applications passed on in the cases just reviewed, and makes the following proposition:

"Without regard at all to what the interlocutory order or decree may be, . . . whether susceptible of active enforcement or not, and whether settling the rights of the parties or partaking of the nature of final relief or not, *supersedeas* is the.remedy in every case if the court was without competency to pronounce the interlocutory order, or to render the interlocutory decree, because of a total want of jurisdiction of the subject-matter and of the parties."

Upon consideration, we entirely agree that the court below was without the invoked jurisdiction of the subject-matter in these cases, and if the question were properly before us, we would have little hesitation in concluding that the interlocutory injunctions herein issued were beyond the power of the court.

It does not follow, however, that the writ of *supersedeas* can be invoked to review or reverse the orders in question merely because they exceeded the jurisdiction of the lower court, nor do the cases relied on by the defendant sustain his contention in this respect.

In *Edmondson* v. *King,* 1 Overt., 425, *Coltart* v. *Hain,* 2 Tenn. Ch., 356; *Mabry* v. *State,* 9 Yerg., 207, and other cases cited, the writ of *supersedeas* was awarded respecting void judgments. These judgments were not only void orders, but were orders capable of active enforcement by execution. So *supersedeas* issued, not merely because the judgments were void, but because they were in course of execution. There was something in *fieri* which might be suspended.

The observation in *Baird* v. *Turnpike Co.*, 1 Lea, 394, *Roberson* v. *Roberson*, 3 Lea, 50, and other cases that the appointment of a receiver might be superseded, if not "within the competency of the court," is no authority for defendant's proposition; for, as pointed out such an order affects possession and is an order capable of active enforcement. If made in a case beyond the competency of the court, it will be superseded, not simply because it is void, but because it affects possession as well.

Bearing in mind that the office of the writ of *supersedeas* is to suspend something in *fieri,* to hold up some affirmative act about to be performed, it is obvious that the writ could have no more effect on a void injunctive order than it would have on an erroneous order of like character. It is powerless as to any order, merely prohibitory and passive. Such orders maintain an equilibrium. There is nothing dynamic in them to check or stay. Whether void or erroneous, such orders may be reviewed and reversed by appropriate proceedings, but to undertake such action upon the writ of *supersedeas* would be a perversion of the function of that writ.

In *Redmond* v. *Redmond,* 9 Baxt., 561, it was sought to supersede certain attachments issued under the fiat of the chancellor on the ground that they were void, but the application was refused. The court said:

"But it is argued that the attachments in this cause were absolutely void. Suppose they were; this court has no power in this mode to quash the power or de-

130 Tenn. 21

clare it void. This application was made to the chancellor; he decided otherwise. His action is not yet before us for review, further than to determine whether he has made any decree the execution of which, for the time being, we may supersede, and, as we have seen, the only decree made is not of a nature to be executed at all; there is nothing to supersede. We can, in this mode, no more reverse the chancellor for refusing to declare this process void than we could reverse any other error." *Redmond* v. *Redmond,* supra.

In *Park* v. *Meek,* 1 Lea, 78, Judge COOPER reviewed the history of the act of 1851, authorizing the *supersedeas* of interlocutory orders, and said:

"Whether desirable or not, the act of 1851, carried into the Code in the sections cited, was not designed to give this court immediate supervisory control over the fiats and orders of the inferior courts and judges, in the grant and refusal of extraordinary process, or over such orders as are only meant to preserve or impound property pending litigation, without adjudging rights. It was intended to meet those cases, fortunately rare, where, in advance of a hearing on the merits, from which the losing party may take an appeal, the inferior court makes an order actually determining rights, and orders its enforcement. The writer of this opinion knows that the act owes its origin to the making of such an order in the chancery court for the county of Shelby, by which one of the litigants was required to pay several thousand dollars within a given

time, and, on a failure, that execution should issue.    To extend the act to orders meant to preserve the *status quo,* without settling rights, or to leave parties where they were before any order whatever was made, would be to strain the language used beyond its obvious sense.''    *Park* v. *Meek,* supra.

As suggested by Judge Cooper in the case just referred to, it may be thought desirable that this court should have more extensive powers with reference to interlocutory proceedings in the trial courts.    It is not necessary to consider this matter here.    As pointed out in *State, ex rel.,* v. *Herbert,* 127 Tenn., 220, 154 S. W., 957, the power of this court over proceedings in the lower court is quite extensive at present.    It may be exercised over the proceedings of the lower courts prior to final decision there, if they are acting illegally, by the writ of *certiorari,* and perhaps otherwise. The writ of *supersedeas,* however, has its peculiar office, and its functions are limited and very well defined.    The writ cannot be employed to serve the purposes for which it is here sought by the defendant.

It may be observed in conclusion that there is no occasion for the issuance of the writ of *supersedeas* or any other writ, to intercept or stay a prohibitory injunctive order of a lower court, when such an order is made in respect to a subject-matter of which the court lacks jurisdiction.

If the court is without jurisdiction of the subject-matter in which it is undertaking to proceed, its orders are void.    An injunction made in respect

to a subject-matter beyond the jurisdiction of the court is a mere nullity, and is binding on no one. It may be disregarded. *State* v. *Ragghianti,* 129 Tenn., 560, 167 S. W., 689.

If a court, having issued injunctive orders in a matter entirely beyond its jurisdiction, undertakes to enforce these orders by contempt process, such process may undoubtedly be superseded under sections 5737, 5738, and 6348 of Shannon's Code, for contempt process is capable of enforcement quite active in its nature.

The motion to dismiss the petition for *supersedeas* in these cases will be allowed.